967 F.2d 423
 Stephen J. MEE, Plaintiff-Appellant,
v.
Jose C. ORTEGA, Parole Officer for Division of Community
Services; Greg Sides, individually, and as a
Parole Officer Supervisor for the
Division of Community
Services,
Defendants-Appellees.
 No. 90-1288.
 United States Court of Appeals,
Tenth Circuit.
 June 18, 1992.
 
 Jeffrey N. Herren of Lakewood, Colo., for plaintiff-appellant.
 William F. Eggert (Malcolm S. Mead, with him on the brief) of Hall & Evans, Denver, Colo., for defendant-appellee Ortega.
 Gregg E. Kay, First Asst. Atty., Tort Litigation Section (Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Arnold, Deputy Atty. Gen., with him on the brief), Denver, Colo., for defendant-appellee Sides.
 Before SEYMOUR and ANDERSON, Circuit Judges, and BRATTON,* District Judge.
 SEYMOUR, Circuit Judge.
 
 
 1
 Stephen J. Mee appeals the district court's dismissal of his civil rights action against state parole officers under 42 U.S.C. § 1983 (1988). At all times relevant to this suit, Mr. Mee was a parolee. He alleges that defendants' decision to hold him in custody pending a parole revocation hearing violated his due process rights. On summary judgment, the district court held that defendants Jose Ortega and his supervisor, Gregory Sides, were absolutely immune from suit. Mee v. Jefferson County Sheriff's Dep't, 744 F.Supp. 252 (D.Colo.1990). We conclude instead that Mr. Ortega was entitled to invoke the protection of qualified immunity, and that there are fact issues precluding summary judgment on this defense. We also conclude that the district court properly dismissed the claims against Mr. Sides for lack of personal involvement. Accordingly, we affirm in part and reverse in part.
 
 I.
 
 2
 We review a district court's summary judgment order under well-established standards. We view the evidence and draw inferences in the light most favorable to the party against whom summary judgment is sought, and we consider questions of law de novo. McDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115, 1117-18 (10th Cir.1991). If a genuine issue of material fact exists, summary judgment is inappropriate.
 
 II.
 
 3
 In the light most favorable to Mr. Mee, the facts together tell the following story.[1] At the time of the events that culminated in this lawsuit, Mr. Albert Torres had filed charges of harassment against Mr. Mee in Arapahoe County, Colorado, alleging that Mr. Mee had tampered with Mr. Torres's automobile. On February 14, 1989, the Arapahoe County Sheriff's department received a report that Mr. Mee had made threatening comments concerning Mr. Torres to a third party. After hearing about the allegations from the Sheriff's department, parole officer Ortega filed a complaint that led to Mr. Mee's arrest for violating conditions of parole.
 
 
 4
 While Mr. Mee was held in the Jefferson County Jail, Mr. Ortega initiated parole revocation proceedings against him. The complaint states:
 
 
 5
 CONDITION 3 CONDUCT: On February 14, 1989, it was reported to Arapahoe County Sheriff's Department that subject Mee, Stephen J. DOC # 55338 made verbal threats on February 10, 1989, against an [sic] witness and alleged victim Mr. Albert Torrez [sic] involved in case # 88-38676 harassment, a case pending in Arapahoe County Courts filed by Mr. Albert Torrez.
 
 
 6
 Rec., vol. I, doc. 1 at exh. A. Mr. Ortega subsequently contacted two lawyers in the Jefferson County District Attorney's office, Miles Madorin and Mark Paulter. Assistant District Attorney Madorin informed Mr. Ortega that the complaint did not set forth a violation of "CONDITION 3 CONDUCT," because it did not allege a violation of criminal law, and thus could not serve as the basis for revocation of parole. Rec., vol. I, doc. 10, exh. A-2 at 6-8. Mr. Paulter initially told Mr. Ortega otherwise, id. at exh. A-1 at 5, but after talking with Mr. Madorin, he changed his mind and concluded that the parolee should be "unarrest[ed]." Id. at 7. Mr. Ortega told Mr. Madorin that he had made a mistake in an earlier revocation proceeding against Mr. Mee, and that this new incident gave him an opportunity to correct the earlier mistake and to put Mr. Mee in jail. Id. at exh. A-2 at 15-16.
 
 
 7
 In spite of the advice from the district attorney's office, Mr. Ortega kept Mr. Mee in custody pending the revocation hearing. Mr. Mee sought a writ of habeas corpus from state court. That court denied the writ on the basis of Mr. Ortega's testimony that a district attorney, whom he could not name, was planning to pursue revocation at the parole hearing. Reporter's transcript, Case No. 89CV1049, District Court, Jefferson County, March 14, 1989 at 15. Instead, the district attorney's office recommended against revocation at the hearing. The parole board decided not to revoke Mr. Mee's parole and released him.
 
 
 8
 In the wake of these events, Mr. Mee filed this action. Among other claims, Mr. Mee asserts that Mr. Ortega and Mr. Sides violated his constitutional rights by holding him in prison prior to the hearing, and that Mr. Ortega further violated his rights by committing perjury at the state habeas proceeding.[2] The court below granted defendant's summary judgment motion, ruling that Mr. Ortega and Mr. Sides were absolutely immune from suit, and relying heavily on our decision in Tripati v. I.N.S., 784 F.2d 345 (10th Cir.1986), cert. denied, 484 U.S. 1028, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988). The district court concluded that Ortega and Sides played an integral role in the judicial process and therefore were shielded from section 1983 liability by the doctrine of quasi-judicial immunity. Mee, 744 F.Supp. at 254. The district court held further that because Mr. Mee had not alleged Mr. Sides's personal involvement in any of the conduct that deprived Mr. Mee of his civil rights, under this court's decision in Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir.1976), the action against Mr. Sides could not be sustained.
 
 III.
 
 9
 We first consider whether the parole officers were entitled to absolute immunity. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Burns v. Reed, --- U.S. ----, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991). Mr. Ortega and Mr. Sides may not claim that they are entitled to absolute immunity from suit simply because they are parole officers. "Here, as in other contexts, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Forrester v. White, 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988); see Cleavinger v. Saxner, 474 U.S. 193, 201-02, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985).
 
 
 10
 A survey of the Supreme Court's absolute immunity cases illustrates the central importance of an official's function in this inquiry. Judges are protected by absolute immunity in civil rights actions from liability based on their judicial actions. Stump v. Sparkman, 435 U.S. 349, 362-64, 98 S.Ct. 1099, 1107-08, 55 L.Ed.2d 331 (1978). At the same time, only qualified immunity protects a judge's decision to fire a probation officer. Forrester, 484 U.S. at 229, 108 S.Ct. at 545. Absolute immunity also protects prosecutors from damages arising from the presentation of testimony at a criminal trial. Imbler v. Pachtman, 424 U.S. 409, 424-29, 96 S.Ct. 984, 992-94, 47 L.Ed.2d 128 (1976). But prosecutors are only qualifiedly immune when they give legal advice to policemen. Burns, 111 S.Ct. at 1942-45. Police officers are absolutely immune from a suit for damages for their testimony at a criminal trial, even if the testimony is perjurious. Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). However, because of the functional difference in the activities at issue, a police officer seeking an arrest warrant may only claim the protection of qualified immunity. Malley v. Briggs, 475 U.S. 335, 340-44, 106 S.Ct. 1092, 1095-98, 89 L.Ed.2d 271 (1986).
 
 
 11
 These rules are relatively straightforward, and they have their roots in common law immunities. See Burns, 111 S.Ct. at 1941. The problem of defining the appropriate scope of immunity becomes more perplexing in the context of officials who perform hybrid functions. In Butz v. Economu, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Court held that agency officials whose functions are equivalent to those of a judge or a prosecutor are accordingly protected from liability in a civil rights action by the doctrine of absolute immunity. In Cleavinger, on the other hand, the Court concluded that prison disciplinary officials, who make decisions concerning detention of inmates and the award of good time credits, are shielded from suit only by qualified immunity. 474 U.S. at 206, 106 S.Ct. at 503. In each of those decisions, the court carefully considered the nature of the challenged function performed by the official. The critical inquiry considers the identity between the function in question and a benchmark function that is clearly accorded one type of official immunity. Both cases used the judicial function as benchmark. In Butz, the identity was clear enough to warrant absolute immunity; in Cleavinger, it was not.
 
 
 12
 Cases like this one involving officials who perform functions connected to, but outside of, the traditional criminal proceeding demand that we pay close attention to the role the official plays. In so doing, we must determine the contours of the line between absolute and qualified immunity, a line which "often is not an easy one to perceive and structure." Cleavinger, 474 U.S. at 206, 106 S.Ct. at 503. Several factors, however, inform our analysis, including:
 
 
 13
 (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.
 
 
 14
 Id. at 202, 106 S.Ct. at 501. These factors serve as a lens through which we can examine the relationship between the challenged function and a benchmark function with an established claim to absolute immunity. "[A] functional approach to immunity requires that those performing like functions receive like immunity." Snell v. Tunnell, 920 F.2d 673, 690 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991).
 
 
 15
 Mr. Mee's suit aims at two specific actions taken by the parole officers. He challenges the decision to hold him in jail pending his hearing before the parole board, and he argues that Mr. Ortega's perjurious testimony in his state habeas proceeding resulted in his continued incarceration. "Given the sparing recognition of absolute immunity by both the Supreme Court and this court, one claiming such immunity must demonstrate clear entitlement." Robinson v. Volkswagenwerk AG, 940 F.2d 1369, 1370 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992).
 
 
 16
 Mr. Ortega argues vociferously that in making decisions about whether to initiate a parole revocation proceeding, he serves the parole board in much the same manner as a prosecutor serves a court. Commentary from the Supreme Court in a different context calls this analogy into question. Discussing the role of a parole officer deciding to initiate a revocation proceeding, the Court observed that "the officer is not by this recommendation converted into a prosecutor committed to convict." Gagnon v. Scarpelli, 411 U.S. 778, 785, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973). Mr. Mee argues that the decision is much more analogous to that made by a police officer deciding whether probable cause exists to make an arrest.
 
 
 17
 The relevant statutory scheme grants Mr. Ortega the powers that he exercised. Colo.Rev.Stat. § 17-2-103 (1986). Indeed, the statute does not require the approval of the district attorney's office to seek revocation of parole or to hold a parolee in custody pending revocation. Id. The Constitution requires, however, "that after the arrest, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." Morrissey v. Brewer, 408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972). Mr. Ortega obviously cannot review his own actions. Prior to the parole board hearing, therefore, Mr. Ortega acted more like a police officer seeking an arrest warrant than a prosecutor presenting a case.
 
 
 18
 As the discussion above indicates, this is a battle about characterization. See Snell, 920 F.2d at 694 (rejecting district court's "characterization ... which would deprive [defendant] of absolute immunity"). Along with invoking different benchmark functions, both parties muster policy arguments in support of their competing characterizations of the parole officer's function. Mr. Ortega argues that allowing parole officers to be held liable for decisions about whether to imprison a parolee prior to a revocation hearing will chill vigorous action and create unnecessary risk to the public of parolees committing further crimes. Mr. Mee contends that without the availability of a civil rights action, there are effectively no checks on the discretion of parole officers and no means by which an aggrieved party may vindicate constitutional rights. Both arguments have some force, and this is a close question.
 
 
 19
 In Snell, we addressed the proper limits of the doctrine of absolute immunity. See 920 F.2d at 686-696. In declining to extend the protection of such immunity to social workers and agency attorneys who had played instrumental roles in removing children from the plaintiffs' home, we focused on the distance between the challenged functions and those benchmark functions to which absolute immunity has been extended. In our discussion, we used parole officers as an example of this analysis:
 
 
 20
 In contrast to the preparation of pretrial bond or presentence reports [at issue in Tripati ], other decisions involving the revocation of probation or parole by a probation or parole officer warrant only qualified, not absolute, immunity because such decisions are farther removed from the judicial process and are not initiated by courts.
 
 
 21
 Id. at 692 n. 18 (emphasis added). Although Snell did not involve a parole officer, consideration of the case law in this and other circuits reveals that the functions at issue in this case are too far removed from the judicial process to be accorded absolute immunity.
 
 
 22
 The district court's decision depends on Tripati. In that case, the plaintiff brought a Bivens action alleging that the probation officers had falsified a pretrial bond report and a presentence report. We held that probation officers performing those functions were absolutely immune from suit because they worked directly for the court and assisted it in reaching decisions regarding pretrial release and sentencing. 784 F.2d at 348. In this case, the parole officers do not serve the court directly. The distance between their roles and the "judicial phase of the criminal process," id., is greater than that considered in Tripati. "The more distant a function is from the judicial process, the less likely absolute immunity will attach." Snell, 920 F.2d at 687. Given this distance, underscored by the Snell footnote, Tripati does not dictate the resolution of this case.
 
 
 23
 In addition to Tripati, several other decisions of this circuit bear on this question. In Valdez v. City and County of Denver, 878 F.2d 1285, 1289 (10th Cir.1989), we extended absolute immunity to officials charged with directly enforcing court orders. In performing the functions at issue in this case, parole officers have considerable discretion under the governing statutory scheme. The parole officers do not act on direct instruction from the court, and their actions thus pose no risk of tension within those bodies charged with the administration of justice. See id. at 1289.
 
 
 24
 Most recently, in Miller v. Glanz, 948 F.2d 1562, 1570-72 (10th Cir.1991), we applied the factors enumerated by Cleavinger and extended absolute immunity to witnesses who conspire to present perjured testimony in a criminal proceeding. As in each of the cases in which absolute immunity protects an official from suit, we identified a strong nexus between the challenged function and the judicial process. Here, using the same benchmark, we strike a difficult balance and decide that qualified immunity is the appropriate standard. The nexus between Mr. Ortega's decision to hold Mr. Mee in custody pending his revocation hearing and the ability of the parole board to effectively adjudicate parole disputes is simply not strong enough to persuade us to affirm the district court. Mr. Ortega has not demonstrated a "clear entitlement" to the protection of absolute immunity.
 
 
 25
 Nor are we persuaded by Mr. Ortega's argument that the failure to extend the protection of absolute immunity to his actions will chill vigorous law enforcement. In DeLoach v. Bevers, 922 F.2d 618 (10th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991), the plaintiff sought damages from a police officer who had allegedly slanted her investigation in such a manner as to cause the plaintiff to be brought to trial on first degree murder charges. We applied qualified immunity and affirmed the verdict against the officer in spite of an argument, similar to the one Mr. Ortega advances here, that the verdict might "chill future law enforcement officers." Id. at 624. Any potential chilling effect is minimized by the very real protection against suit afforded by qualified immunity. See Cleavinger, 474 U.S. at 206, 106 S.Ct. at 503 ("[t]his less-than-absolute protection is not of small consequence").
 
 
 26
 Other circuits have more directly considered the level of immunity that officials involved in parole decisions should be accorded. The courts have generally concluded that parole boards and their members are shielded by absolute immunity when performing adjudicatory functions. See, e.g., Johnson v. Rhode Island Parole Bd. Members, 815 F.2d 5, 8 (1st Cir.1987); Trotter v. Klincar, 748 F.2d 1177, 1182 (7th Cir.1984); Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir.), cert. denied, 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981). In all of these cases, the underlying rationale hinged on the functional identity between decisions by the parole board and the benchmark function of adjudication.
 
 
 27
 Mr. Ortega contends that his connection to the parole board's deliberative processes should entitle him to absolute immunity. The Eighth Circuit concluded to the contrary in Nelson v. Balazic, 802 F.2d 1077, 1079 (8th Cir.1986), that the nexus between the operations of the parole board and the role of the parole officer was not strong enough to demand absolute immunity for the officer. The court reasoned that a parole officer arresting and detaining a parolee prior to revocation proceedings is closer to the benchmark function of a police officer making a probable cause determination. As a result, the court held that only qualified immunity shields a parole officer performing such functions. See also Ray v. Pickett, 734 F.2d 370, 374 (8th Cir.1984) (qualified immunity for parole officer filing violation report); but see Johnson v. Kegans, 870 F.2d 992, 998 (5th Cir.), cert. denied, 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989). The First Circuit in Johnson v. Rhode Island Parole Bd. Members, 815 F.2d 5 (1987), saw no tension between its conclusion that parole board members are absolutely immune and the Eighth Circuit's conclusion that parole officers are only entitled to claim the protection of qualified immunity. "We believe that the function of an arresting parole officer is more akin to that of a police officer and sufficiently distinguishable from the quasi-judicial duties performed by a parole board member in deciding parole cases." Id. at 8.
 
 
 28
 Consideration of the factors outlined in Cleavinger necessarily informs our decision. Three factors are particularly compelling in this case. First, few if any safeguards exist to check against parole officers who impermissibly infringe a parolee's constitutionally protected liberty interest. See Morrissey, 408 U.S. at 485, 92 S.Ct. at 2602; Demoran v. Witt, 781 F.2d 155, 158 (9th Cir.1986) (holding officers absolutely immune where "a plethora of procedural safeguards surround the filing of a presentence report"). As Mr. Ortega reminds us in his brief, the Colorado statutory scheme does not require a district attorney's input in a parole officer's decision to imprison and hold a parolee. Answer Brief (Ortega) at 4; Colo.Rev.Stat. § 17-2-103. He argues that the safeguards surrounding the hearing itself are sufficient to protect against the danger of improper prosecution. Answer Brief (Ortega) at 16. But the parolee has a constitutionally protected interest in his continued freedom, and no ready means to vindicate that interest. Second, by insulating the parole officer from any direct legal supervision, the Colorado statutes create the risk that precedent will not control decisionmaking. Finally, lost time free from the constraints of incarceration cannot be recovered through the appellate process. Because the statutory system gives the parolee nowhere to turn, the private damages action provides an essential means to deter unconstitutional conduct. See Cleavinger, 474 U.S. at 202, 106 S.Ct. at 501; Malley, 475 U.S. at 343 n. 5, 106 S.Ct. at 1097 n. 5.
 
 
 29
 We agree with the First Circuit that our conclusion here is not inconsistent with the conclusion reached by those circuits that accord parole board members absolute immunity. We hold only that Mr. Ortega's decision to hold Mr. Mee pending the parole revocation hearing is protected by qualified rather than absolute immunity. The distance between that decision and the hearing itself is substantial. This distance is decisive; even if Mr. Ortega's role in the revocation hearing itself were shielded by absolute immunity, qualified immunity still governs the functions at issue here.[3]
 
 IV.
 
 30
 Although he is only entitled to qualified immunity for the claim considered above, Mr. Ortega is entitled to absolute immunity for any damages resulting from his testimony at the state habeas proceeding. On this point, the logic of Miller is inescapable. See 948 F.2d at 1570-72. As a witness, Mr. Ortega directly serves the court, and his testimony is accordingly protected. See Briscoe, 460 U.S. at 334-36, 103 S.Ct. at 115-16.
 
 V.
 
 31
 We next consider whether the opinion of the district court may nevertheless be affirmed on the basis of qualified immunity, an issue the district court did not reach. Under this standard, "officials performing discretionary functions are generally shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights [of] which a reasonable person would have known." Anthony v. Baker, 767 F.2d 657, 664 (10th Cir.1985). Accordingly, "summary judgment in favor of a defendant seeking qualified immunity is appropriate only if the constitutional standards governing the challenged conduct were not clearly established." Rex v. Teeples, 753 F.2d 840, 844 (10th Cir.), cert. denied, 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985). Here, the constitutional standards were established by the Supreme Court in its Morrissey decision in 1972. Morrissey held that "[i]mplicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole." 408 U.S. at 479, 92 S.Ct. at 2599. At the time of the conduct of which Mr. Mee complains, the law was clear.
 
 
 32
 Morrissey alone does not preclude summary judgment for Mr. Ortega on the basis of qualified immunity. "[T]he plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it." Hilliard v. City and County of Denver, 930 F.2d 1516, 1518 (10th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991). If, as a matter of law, the parole officer's decision to hold Mr. Mee in jail pending the revocation hearing was an action "that a reasonable [person] could have believed lawful," Anderson v. Creighton, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987), then Mr. Ortega is "entitled to dismissal before discovery," Workman v. Jordan, 958 F.2d 332, 336 (10th Cir.1992). In order to preclude summary judgment, a plaintiff must demonstrate a connection between the prior law and the conduct alleged to have violated the right. Hilliard, 930 F.2d at 1518. "If the actions are not those that a reasonable person could have believed were lawful, then discovery may be necessary before a motion for summary judgment on qualified immunity grounds can be resolved." Workman, 958 F.2d at 336.
 
 
 33
 Mr. Mee alleges that Mr. Madorin's comments put Mr. Ortega on notice that continuing to hold Mr. Mee violated his constitutional rights, and that, in light of these comments, no reasonable parole officer could have believed Mr. Mee's continued incarceration to be lawful. Mr. Ortega claims that his disagreement with Mr. Madorin was not significant and does not go to the question of whether his conduct violated clearly established law. See Answer Brief (Ortega) at 25-26. Specifically, Mr. Ortega argues that Mr. Mee does not challenge the arrest, and that after arrest the Colorado statute requires that Mr. Mee be held in jail. See Colo.Rev.Stat. § 17-2-103(4)(a).
 
 
 34
 This is true, as far as it goes. The statute further requires, however, that the parolee be held pending action pursuant to section 17-2-103(5). Id. That section requires that the parole officer complete an investigation and take one of three specified courses of action. The officer may: (a) file a complaint and seek revocation; (b) order release and dismiss a complaint, thus restoring parole; or (c) order release and issue a summons requiring the parolee to appear at a revocation hearing.[4] Id. at 17-2-103(5). Mr. Ortega chose (a) and filed a complaint seeking parole revocation. Mr. Mee's argument, in essence, is that after the conversation with Mr. Madorin, a reasonable parole officer would have taken one of the two routes involving release and that Mr. Ortega's failure to do so violated Mr. Mee's clearly established right to remain free unless he violated the conditions of his parole.
 
 
 35
 In our judgment, there are factual disputes on this record that require more development before a ruling on the qualified immunity issue is appropriate. See Valdez, 878 F.2d at 1288 (under qualified immunity standard, "[f]actual disputes would require discovery if not a trial"). If Mr. Madorin's advice was in fact echoed by Mr. Paulter, Mr. Mee's case appears compelling. Given the unified advice of the district attorney's office, it seems unlikely that a reasonable parole officer could think it was lawful to continue to hold Mr. Mee in jail. If, on the other hand, Mr. Paulter's advice conflicted with that offered by Mr. Madorin, and Mr. Ortega never knew that Mr. Paulter had changed his mind, then Mr. Ortega's argument that a reasonable parole officer might have believed Mr. Mee's continued incarceration to be lawful seems plausible. Consequently, we remand to the district court for further proceedings.[5]
 
 VI.
 
 36
 We agree with the district court that Mr. Mee has not sufficiently established Mr. Sides's personal involvement. The primary basis for Mr. Mee's claims against Mr. Sides is Mr. Sides's role as Mr. Ortega's supervisor. Absent a showing of an "affirmative link" between the constitutional violation and the supervisor's own actions, or failure to supervise, a supervisor is not liable under section 1983. Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir.1988). As both sides agree, this issue turns on whether Mr. Madorin's comment at deposition, viewed in the light most favorable to the non-moving party, establishes a fact question as to whether Mr. Sides was personally involved in the decision to hold Mr. Ortega. Mr. Madorin recalled "that Mr. Ortega then made a statement [at the revocation hearing]--either Mr. Ortega or Mr. Sides or both--made a statement about that they were the parole officers and they didn't want this matter to be just dropped." Rec., vol. I, doc. 10 at exhibit A-2 at 30.[6] Mr. Mee also points to Mr. Sides's signature at the bottom of the documents initiating parole revocations proceedings.
 
 
 37
 Simply put, there is no issue here. Mr. Mee points to nothing that involves Mr. Sides in the decision to hold Mr. Mee after Mr. Ortega spoke with the assistant district attorneys. Even if Mr. Sides appeared at the revocation hearing, his presence did not deprive Mr. Mee of his liberty interest, which was partially vindicated at the hearing. Moreover, Mr. Sides's presence cannot somehow relate back and allow us to presume participation in Mr. Ortega's earlier decision. On this record, Mr. Mee has not raised a fact issue that can survive Mr. Sides's motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 38
 In conclusion, we REVERSE the dismissal of Mr. Mee's section 1983 action against Mr. Ortega. We hold that Mr. Ortega's actions are shielded from liability by qualified rather than absolute immunity, and that genuine issues of material fact remain on that issue. We AFFIRM the district court's dismissal of the action as against Mr. Sides. The case is REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Howard C. Bratton, Senior United States District Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 [1]
 To the extent our recitation of the undisputed facts differs from that of the district court, it accords with the understanding of the parties and the record
 
 
 [2]
 Mr. Mee's amended complaint also claims false imprisonment, malicious abuse of process, intentional infliction of emotional distress, and outrageous conduct. Rec., vol. I, doc. 5. Except as they are subsumed within the claims set forth in the text, these other claims are not before us
 
 
 [3]
 We do not decide the level of immunity Mr. Ortega and Mr. Sides are entitled to for their participation in the revocation hearing itself. Needless to say, that would present a different question. In Colorado, revocation hearings are clearly adjudicatory, with provisions for counsel and cross-examination. The Fifth Circuit has indicated that parole officers whose function is connected directly to such a hearing would be absolutely immune. See Farrish v. Mississippi State Parole Bd., 836 F.2d 969, 974 (5th Cir.1988)
 
 
 [4]
 This is the course of action Mr. Ortega took with regard to Mr. Mee's first parole problem. In his deposition, Mr. Madorin stated that: "Mr. Ortega felt that he had made a big mistake by letting him go on the summons, and to rectify this he had to file this revocation so Mr. Mee would be put in jail." Rec., vol. I, doc. 10, exhibit A-2 at 15-16
 
 
 [5]
 We note that "qualified immunity is not only a defense to liability but also entitlement to immunity from suit and other demands of litigation." Workman, 958 F.2d at 336. If, at any point before trial, it appears to the district court that, as a matter of law, a reasonable parole officer could have believed Mr. Mee's continued incarceration lawful, summary judgment would be appropriate. We hold only that, on the record before us, such a determination is not appropriate
 
 
 [6]
 The record does not include a transcript of the revocation hearing