972 F.2d 357
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
Jack JOHNSTON, Defendant-Appellant,
and
Pros International, Inc.; Richard C. Landerman; George
Craig Stayner; David M. Lamoreaux, Defendants.
 No. 90-4189.
 United States Court of Appeals, Tenth Circuit.
 July 28, 1992.
 
 Before SEYMOUR and BARRETT, Circuit Judges, and BROWN,* District Judge.
 ORDER AND JUDGMENT**
 SEYMOUR, Circuit Judge.
 
 
 1
 Summary judgment is not appropriate when the "evidence presents a sufficient disagreement to require submission to a jury." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In this case the district court granted the SEC's motion for summary judgment against Jack Johnston, finding that "Johnston knew or should have known" of the conduct underlying the violations of the securities laws alleged in this case. SEC v. PROS Int'l, Inc., No. 87-C-0751-S, slip op. at 8 (D.Utah Oct. 4, 1990) (hereinafter "Op."). On appeal, Mr. Johnston argues that summary judgment was improper in light of deposition testimony that he did not know of the alleged conduct. Because we agree that the district court necessarily made credibility determinations in order to grant the SEC's summary judgment motion, we reverse.
 
 
 2
 In reviewing a district court's grant of summary judgment, "[w]e view the evidence and draw inferences in the light most favorable to the party against whom summary judgment is sought, and we consider questions of law de novo. If a genuine issue of material fact exists, summary judgment is inappropriate." Mee v. Ortega, No. 90-1288, 1992 WL 133314, at * 1, (10th Cir. June 18, 1992) (citation omitted); see Fed.R.Civ.P. 56(c).
 
 
 3
 The district court concluded that Johnston violated several provisions of the securities laws, and issued a permanent injunction enjoining him from future violations and retaining jurisdiction to enforce the injunction in the future. The district court specifically held that Johnston violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5; Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); and Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & (c). On the strength of these violations, the district court granted the injunctive relief sought by the SEC.
 
 
 4
 Mr. Johnston orchestrated an effort to revive defunct Delaware corporations in hopes of selling the revived corporations to businesspeople seeking to bring companies public.[1] Mr. Johnston said that he had heard about the possibility of reviving corporations over a number of years. Appellant's App., vol. II, doc. 18 at 457. He anticipated that the venture would be extremely lucrative. Id. at 461-63. He hired an attorney and an investigator to identify the corporations and take the steps necessary to revive them. When asked by his attorney, he provided individuals to serve as officers and directors of the corporations in order to facilitate revival. This litigation stems from the revival of one such corporation, Ad-Print.
 
 
 5
 Ad-Print was revived by Mr. Johnston's team and then used by another corporation (PROS) as a vehicle to avoid the registration requirements of the securities laws. The purported revival and the subsequent merger and issuance of new stock provide the basis for the SEC's action and the district court's holding. The parties agree as to the sequence and nature of the relevant events. They disagree as to Mr. Johnston's level of understanding and participation in those events. He maintains that not only did he not know that the revival scheme was illegal, but that he relied on his lawyer to conduct it in a legal fashion.[2] He claims further that he did not know any of the details of the scheme. Testimony at his deposition supports this claim on appeal. See Appellant's App., vol. II, doc. 18 at 451-80.
 
 
 6
 Three of the violations found by the district court require scienter.[3]
 
 
 7
 Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." [Ernst & Ernst v.] Hochfelder, 425 U.S. [185,] 193 [ (1976) ]. This intent requirement can be satisfied by a showing of recklessness. Reckless behavior is conduct that is "an extreme departure from the standards of ordinary care and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it." Hackbart [v. Holmes], 675 F.2d [1114,] 1118 [ (10th Cir.1992) ].
 
 
 8
 Board of County Commissioners of San Juan County v. Liberty Group, Nos. 90-2266, 90-2275, 91-2166, 1992 WL 110823, at * 7 n. 3 (10th Cir. May 28, 1992). Mr. Johnston argues that any resolution of the scienter question necessarily entails a credibility determination. In short, he asserts the district court could not find a violation of the securities laws unless it chose not to believe his testimony that he did not know about the conduct of those in his employ.
 
 
 9
 "Summary judgment is generally inappropriate when mental state is an issue, unless no reasonable inference supports the adverse party's claim." Vucinich v. Paine, Webber, Jackson & Curtis, Inc., 739 F.2d 1434, 1436 (9th Cir.1984); see National Union Fire Ins. Co. v. Turtur, 892 F.2d 199, 205 (2d Cir.1989) (same); Romero v. Union Pac. R.R., 615 F.2d 1303, 1309 (10th Cir.1980) (same). In granting summary judgment, the court below reasoned that: "Based on the evidence presented to the court it is difficult to believe Johnston was not aware of the fraudulent activities of his agents." Op. at 12 (emphasis added). Earlier in its opinion, the court denied Mr. Johnston's motion for summary judgment. In support of denial, the court reasoned: "The SEC disputes, with credible evidence and testimony, Johnston's defense that he lacked the necessary scienter for the above-referenced securities laws violations." Op. at 7 (emphasis added). The conclusion that the district court granted the SEC's motion because it found Mr. Johnston's testimony less credible than the SEC's evidence is inescapable.[4]
 
 
 10
 Admittedly, Mr. Johnston's testimony is difficult to accept; it is not however incredible as a matter of law.[5] In deciding that Mr. Johnston was not telling the whole truth, the district court intruded on the exclusive province of the trier of fact. A jury that believed Mr. Johnston could reasonably conclude that his behavior did not amount to recklessness as defined by Hackbart, 675 F.2d at 1118. This possibility alone suffices to preclude summary judgment in this case.
 
 
 11
 The district court also concluded that Mr. Johnston had violated Sections 5(a) and (c) of the Securities Act. These provisions prohibit the sale of unregistered securities, and their violation does not require scienter. We see no error in the district court's rejection of Mr. Johnston's defense of withdrawal. As we can discern no material fact in dispute and agree with the district court's legal conclusions, we conclude that summary judgment on the Section 5 claims was appropriate for substantially the reasons stated by the district court.
 
 
 12
 The district court granted injunctive relief on the basis of the violations discussed above and Mr. Johnston's past and continued involvement in securities. Because it is impossible for us to tell what part the violations we reverse played in the decision to enjoin Mr. Johnston, we must reverse the district court's grant of injunctive relief.
 
 
 13
 The decision entered below is REVERSED and REMANDED for further proceedings in accordance with this opinion.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United State District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Apparently the people involved believed that by reviving corporations that were defunct prior to 1933, the registration requirements of the '33 Act would not attach to any securities issued by the purportedly revived corporation. Thus, persons seeking to issue securities could merge with the revived corporation and circumvent the registration requirements
 
 
 [2]
 We do not suggest that Mr. Johnston has effectively established the defense of reliance on counsel. We simply conclude infra that summary judgment in favor of the SEC was improper on the scienter issue because of material fact issues
 
 
 [3]
 Scienter is a necessary element of a 10(b), 10b-5, and 17(a) offense
 
 
 [4]
 Importantly, neither the district court nor the parties cite any cases that conclude that a defendant had the requisite scienter. In all of the cases cited by the SEC, summary judgment was granted for a defendant because the plaintiff failed to point to evidence that would support a jury finding of scienter. See Mutual Fund Investors, Inc. v. Putnam Management Co., 553 F.2d 620, 624 (9th Cir.1977) (summary judgment for defendant in an antitrust case); In re Apple Computer Sec. Lit., 886 F.2d 1109, 1117 (9th Cir.1989) ("However, plaintiffs produced no evidence controverting defendants' good faith basis for making the other statements."), cert. denied, 496 U.S. 943 (1990); see also O'Connor v. R.F. Lafferty & Co., Inc., No. 90-1371, 1992 WL 110869, at * 4 (10th Cir. May 28, 1992) (summary judgment for defendant under 10b-5 where no evidence of intentional or reckless conduct appeared in record)
 
 
 [5]
 If Mr. Johnston's testimony were impossible to believe, so that a judgment j.n.o.v. would be required were a jury to rule in his favor, summary judgment would be appropriate