Linda LANGLEY, Plaintiff–Appellee,

v.

ADAMS COUNTY, COLORADO; Adams County Board of County Commissioners; Elaine T. Valente, individually and in her official capacity; James M. Nelms, individually and in his official capacity; Harold E. Kite, individually and in his official capacity; Randy Brodersen, individually and in his official capacity; Robert D. Millsap, individually and in his official capacity, Defendants–Appellants.

No. 92–1123.

United States Court of Appeals, Tenth Circuit.

March 3, 1993.

Robert J. Loew, Adams County Atty., and Rita M. Harrell, Asst. County Atty., Brighton, CO, for defendants-appellants.

Darold W. Killmer, Gilbert M. Roman and Kevin W. Daley of Feiger, Collison & Killmer, Denver, CO, for plaintiff-appellee.

Before LOGAN and MOORE, Circuit Judges, and BELOT,[*] District Judge.

LOGAN, Circuit Judge.

Defendants appeal the district court's denial of their motion for summary judgment on the basis of qualified immunity. This action arises from the termination of plaintiff Linda Langley's employment with Adams County, Colorado, on June 18, 1991. Plaintiff worked for Adams County in the Human Relations Department for eleven years, including several years as assistant director and acting director. Plaintiff asserts that she was terminated because she had testified in support of another employee's wrongful termination claim and because she had brought additional claims of improper discrimination to her superiors' attention. Defendants assert that she was properly terminated for insubordination.[1]

Plaintiff pleads five claims for relief: (1) retaliation for exercise of her free speech rights, in violation of 42 U.S.C. § 1983; (2) deprivation of her property interests in continued employment without due process, also in violation of § 1983; (3) harassment and retaliation for her opposition to illegal

---

[*] Honorable Monti L. Belot, United States District Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

discrimination, in violation of 42 U.S.C. §§ 2000e to 2000e–17; (4) conspiracy to retaliate against her for having testified in federal court, in violation of 42 U.S.C. § 1985(2); and (5) promissory estoppel. Defendants moved for summary judgment both on the merits of each of plaintiff's claims and on the basis of qualified immunity. The district court denied defendants' motion in total, and they filed a notice of interlocutory appeal on the basis of qualified immunity, *see Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Plaintiff then filed a motion in the district court to have the individual defendants' appeal certified as frivolous so that the case could continue in the district court pending the appeal. *See Stewart v. Donges*, 915 F.2d 572, 577–78 (10th Cir.1990). The district court granted plaintiff's motion with respect to defendant Robert D. Millsap, but denied as to the other defendants.

In *Patrick v. Miller*, 953 F.2d 1240 (10th Cir.1992), we laid out the analysis applicable to an appeal of an order granting or denying qualified immunity. Once a defendant asserts the affirmative defense of qualified immunity,

> "[t]he plaintiff carries the burden of convincing the court that the law was clearly established." *[Pueblo Neighborhood Health Ctrs., Inc. v.] Losavio*, 847 F.2d [642,] 645 [ (10th Cir.1988) ]. More specifically, the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Id.* at 646. Plaintiff's burden cannot be met merely by identifying in the abstract a clearly established right and then alleging defendant violated that right. *Id.* at 645. To satisfy his burden, the plaintiff must make a more particularized showing— "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

> Once plaintiff has identified the clearly established law and the conduct that violated the law with sufficient particularity, the defendant then bears the burden as a movant for summary judgment of showing no material issues of fact remain which would defeat the claim of qualified immunity. *Losavio*, 847 F.2d at 646; *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir.1989). At this point we "consider in the light most favorable to the plaintiff all undisputed facts discernible from the pleadings and other materials submitted to supplement them by the time the motion for summary judgment is made." *DeVargas v. Mason & Hangar–Silas Mason Co.*, 844 F.2d 714, 719 (10th Cir.1988) (footnote omitted).

*Id.* at 1243 (alteration in original).

Although we view the evidence and draw all inferences in the light most favorable to the party opposing summary judgment, that party "must identify sufficient evidence which would require submission of the case to a jury." *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986)). "[A] movant need only point to those portions of the record which demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). When, as here, the nonmoving party will bear the burden of proof at trial, that party must go beyond the pleadings and through affidavits, deposition testimony, answers to interrogatories, and admissions, designate specific facts showing there is a genuine issue for trial. *Id.; see also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). The presence or absence of qualified immunity is a question of law, which we review de novo. *Patrick*, 953 F.2d at 1243.

## I

Before we address the merits of the appeal, we must first ensure there is no confusion concerning the identity of the

appellants and which of plaintiff's claims are subject to this appeal. The summary judgment motion and the notice of appeal were filed on behalf of all defendants including the individually named defendants in both their individual and official capacities. Qualified immunity, however, is available only to defendants sued in their individual capacities. *Hafer v. Melo*, —— U.S. ——, ——, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Thus, the only defendants who can assert a qualified immunity defense here, and thus the only proper appellants, are county commissioners Elaine T. Valente, James M. Nelms, and Harold E. Kite, and county employees Randy Brodersen and Robert D. Millsap in their individual capacities.[2] The defendants named in their official capacities and defendants Adams County and the Adams County Board of County Commissioners are not proper appellants.

■ In her response brief, plaintiff asserts that Millsap is not an appellant because the district court certified his appeal as frivolous pursuant to *Stewart*, 915 F.2d at 577–78. Plaintiff misconstrues the purpose and effect of the *Stewart* certification procedure. In *Stewart*, we recognized that ordinarily the filing of a notice of appeal " 'divests the district court of its control over those aspects of the case involved in the appeal.' " 915 F.2d at 575 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982)). "[A]n interlocutory appeal from an order refusing to dismiss on ... qualified immunity grounds relates to the entire action and, therefore, it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant." *Id.* at 576. Because this divestiture of jurisdiction is subject to abuse and can unreasonably delay trial, we recognized in *Stewart* a procedure by which a district court may maintain jurisdiction over a defendant if the court certifies that the defendant's appeal is friv-

olous. *Id.* at 576–78. Once a district court so certifies a qualified immunity appeal as frivolous and thus regains jurisdiction, that does not affect our jurisdiction. " 'Rather, both the district court and court of appeals shall have jurisdiction to proceed. Thus the defendant is entitled ultimately to appellate review.' " *United States v. Hines*, 689 F.2d 934, 937 (10th Cir.1982) (addressing the analogous issue of interlocutory appeals based on claims of double jeopardy and quoting *United States v. Leppo*, 634 F.2d 101, 105 (3d Cir.1980)). We therefore have jurisdiction over and address Millsap's appeal.

Finally, the individual defendants assert that they are entitled to qualified immunity on plaintiff's claim under Title VII of the Civil Rights Act of 1964 (codified at 42 U.S.C. §§ 2000e to 2000e–17). Plaintiff asserted her Title VII claim only against "Adams County and its Board of Commissioners" and not against the individual defendants. Appellants' App. at 8. This appeal therefore does not include plaintiff's Title VII claim.

## II

Plaintiff worked in the Adams County Human Resources Department for eleven years, with her last position being the department's assistant director. In October 1990, she testified in support of a former Adams County employee's federal court action for wrongful termination against Adams County. The plaintiff in that case, William Sweeney, claimed that the county terminated him in violation of his First and Fourteenth Amendment rights. After plaintiff's testimony, Adams County settled with Sweeney for $425,000. Later, plaintiff, in her capacity as assistant director of human resources, gave Sweeney a positive job reference. In February 1991, defendant Millsap, who was plaintiff's supervisor, told her that the county attorney had told him that the county commissioners

---

2. Naming these people as defendants also in their official capacities is another way of pleading an action against the entities of which they

are agents. *See Hafer*, —— U.S. at ——, 112 S.Ct. at 361.

were upset with her for giving Sweeney the favorable reference.

Around this same time, several county employees approached plaintiff with concerns over possible sexual and racial discriminatory practices. Plaintiff believed these complaints had merit and brought them to the attention of the county's equal employment opportunity officer. On May 24, 1991, three employees of the Human Resources Department filed a joint complaint with the EEO officer alleging that they had been discriminated against because of their sex and ancestry. These employees also alleged discrimination against other employees. As a result of these allegations, the EEO officer and the county attorney conducted an internal investigation into county employment practices. As part of that investigation, the EEO officer and one of the county attorneys interviewed plaintiff during a tape-recorded session. During this interview plaintiff stated that she kept notes in her Daytimer documenting when county employees had come to speak to her concerning alleged discriminatory practices. She stated that these notes reflected meetings held during working hours and that the Daytimer was purchased with county funds. Plaintiff drafted a memo to the county attorney dated June 11 documenting the allegations of discrimination she made during the June 7 interview.

On June 12, defendant Millsap directed plaintiff to give any notes she had concerning discriminatory employment practices, including her Daytimer, to the county attorney by June 13. Because of concerns over privacy and the direction of the investigation, plaintiff on June 13 told Millsap that she wanted to consult her attorney before turning over her Daytimer and stated that she would provide a response to his directive by June 17. Later on June 13, Millsap decided that plaintiff's failure to produce the requested records constituted insubordination and violated the county's personnel manual. He declared that the "seriousness of these violations are considered 'Just Cause' to discharge an employee." He scheduled a pre-termination hearing for June 18 and suspended plaintiff with pay until the conclusion of the hearing.

On June 14, plaintiff's attorney wrote to defendant Brodersen that he was unavailable to attend the June 18 hearing and requested a continuance of two or three days. Millsap responded on June 17 that the hearing could be delayed and rescheduled for the following week if plaintiff were willing to take vacation time or forego pay during the delay. Plaintiff's attorney responded later that day stating that a hearing the following week was acceptable and that plaintiff would use vacation time in the interim, if necessary. On June 18, Millsap withdrew the offer to delay the hearing until the following week and stated that plaintiff's employment would be terminated at the close of business that day. He confirmed this decision in a letter dated June 19 and stated that plaintiff was in an "unpaid leave status" until she exhausted the appeal process. Appellants' App. at 65–67.

Plaintiff appealed Millsap's decision to defendant Brodersen, the county administrator, on June 24. Brodersen affirmed Millsap's decision the next day. The final step in the county appeal process allowed plaintiff to appeal Brodersen's decision to the Adams County Grievance Board, which is composed of five members of the community who are not county employees. Plaintiff did not appeal to the Grievance Board and was removed from unpaid leave status and finally terminated on July 3.

The county personnel manual states that county commissioners, department heads, and authorized supervisors may discharge an employee for "just cause" and lists insubordination as a just cause. *Id.* at 168, 171. The manual also states that the county subscribes to the concept of "progressive discipline." *Id.* at 170.

### III

■ Plaintiff asserts that defendants violated her First Amendment rights by retaliating against her for her testimony against the county in the Sweeney case and for her later reports of discriminatory prac-

tices by the county. "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). As we stated in *Patrick:*

> Determining whether a governmental employer has infringed upon an employee's First Amendment rights requires a case-by-case, two-part analysis: First, we must determine if the speech was on a matter of public concern; and second, we must "balance ... the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).

953 F.2d at 1246 (alteration in original).

■ The law is clearly established that the "First Amendment protects the right to testify truthfully at trial." *Melton v. City of Okla. City*, 879 F.2d 706, 714 (10th Cir. 1989) (*Melton I*), *overruled in part on reh'g en banc*, 928 F.2d 920 (10th Cir.) (*Melton II*), *cert. denied*, — U.S. — & —, 112 S.Ct. 296 & 297, 116 L.Ed.2d 241 (1991). Similarly, statements in opposition to alleged discriminatory employment practices are also speech on matters of public concern. *See Patrick*, 953 F.2d at 1247 (finding the law clearly established that such speech has been protected since 1983). Defendants do not dispute that plaintiff's speech was on matters of public concern or offer any countervailing county interests to balance against plaintiff's interests. A reasonable person would have known of plaintiff's First Amendment rights. Plaintiff has thus met her burden of showing clearly established law governing her First Amendment claim.

Defendants assert two factual bases for their qualified immunity defense. First, they assert that plaintiff was terminated for insubordination and that her termination had nothing to do with her assertion of her First Amendment rights. We agree with the district court that defendants have failed to show the absence of disputed factual issues concerning why plaintiff was discharged. Plaintiff was terminated within two weeks of her raising concerns about illegal employment practices by the county. She had worked for the county for eleven years, and there is no evidence of prior discipline problems. As the district court stated, the motivation for terminating plaintiff is a "hotly contested issue of material fact." Appellants' App. at 228.

■ Second, defendant commissioners and Brodersen contend that plaintiff has not sufficiently shown that they personally violated her First Amendment rights. "Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. at 526, 105 S.Ct. at 2815; *accord Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434, 1437 (10th Cir.1990). Plaintiff's complaint alleges that the "defendants" generally, including the nonindividual defendants, violated her rights; it does not allege specific actions by each defendant that violated her rights. Her briefs suffer from the same penchant for generality. The record indicates that defendant Millsap was the primary employee involved in her termination. There is no evidence of any involvement by Brodersen in plaintiff's discharge until plaintiff appealed Millsap's decision to him, and even then his only involvement was affirming Millsap's decision. Without more, we cannot find that plaintiff raised a material issue concerning Brodersen. *See Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. We therefore reverse the district court's denial of qualified immunity for Brodersen on the First Amendment claim.

■ As to the commissioners, plaintiff's affidavit states that they were displeased with her giving Sweeney a positive job recommendation after he sued the county for wrongful termination. While not ac-

knowledging (nor denying in their affidavits) that they were aware that plaintiff testified in support of Sweeney, they contend that any "displeasure" communicated to plaintiff was because her reference for Sweeney violated county policy concerning who is authorized to give references. This does not overcome the inference that the commissioners' alleged "displeasure" was due to her testimony.

Standing alone, however, this one inference is insufficient to support plaintiff's claim that the commissioners in their individual capacities violated her First Amendment rights. Plaintiff presented no other evidence of their involvement with her termination. The commissioners each filed affidavits stating that before her termination, they were unaware of her allegations of discrimination and that they were not involved in her termination. We conclude that plaintiff has not raised a material issue concerning the commissioners' involvement in her termination to defeat their claim of qualified immunity, and therefore reverse the district court's denial of qualified immunity for defendant commissioners Valente, Nelms, and Kite with respect to plaintiff's First Amendment claim.

## IV

■■■ Plaintiff next claims that defendants violated her Fourteenth Amendment rights by terminating her employment without due process. To make this claim, plaintiff must first show that she had a property interest in continued employment with the county, which is a question of state law. *Patrick*, 953 F.2d at 1244. The district court concluded that under Colorado law plaintiff had a property interest in her continued employment, and defendants do not dispute this conclusion. The question then becomes whether plaintiff received due process before being terminated. Due process requires that plaintiff have had an opportunity to be heard at a meaningful time and in a meaningful manner before termination. *Id.* "This requirement includes three elements: 1) an impartial tribunal; 2) notice of charges given a reasonable time before the hearing; and 3)

a pretermination hearing except in emergency situations." *Id.* The pre-termination hearing, though necessary, need not be elaborate or formal. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The procedural requisites and formality of pre-termination procedures vary depending on the importance of the interests involved and the nature of post-termination proceedings. *Id.* Under *Loudermill*, the adequacy of pre-termination procedures must be examined in light of available post-termination procedures. *See Derstein v. Kansas,* 915 F.2d 1410, 1413–14 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991).

■■■ Defendant Millsap initially scheduled the pre-termination hearing for June 18, but then agreed to reschedule it to the following week if plaintiff would take vacation time or unpaid leave until the hearing. Plaintiff appeared to accept Millsap's offer, but at the last minute Millsap suddenly withdrew the offer and terminated plaintiff without holding a hearing. We agree with the district court that "[a] reasonable jury could conclude that this last minute change did not provide plaintiff with a reasonable opportunity to be heard in a meaningful time and a meaningful manner." Appellants' App. at 231. In addition, even if plaintiff did receive a reasonable opportunity for a pre-termination hearing, that hearing by itself would not appear to have satisfied the county's due process obligation. As the person terminating plaintiff, Millsap was not an unbiased decisionmaker. Moreover, although defendants argue that plaintiff could have appealed her termination to the county grievance board, the record does not show that the proceeding before the grievance board would have been a full-blown hearing sufficient to overcome any deficiencies in pre-termination procedure. *See Melton II,* 928 F.2d at 939 (Logan, J. dissenting) (stating that if pre-termination hearing is limited as in *Loudermill*, post-termination hearing must include "the right to representation by an attorney and to present evidence and to confront and cross-examine witnesses who have made the accusations"). Thus, there

remain material issues of fact as to whether plaintiff received due process.

We therefore conclude that the district court correctly denied qualified immunity with respect to the due process claim for Millsap, the person who terminated plaintiff, and for Brodersen, the person who affirmed Millsap's decision. *See Melton I,* 879 F.2d at 731 (denying qualified immunity to defendants in positions to ensure plaintiff received due process).

■ There is no evidence that the commissioners, however, were directly involved in affording plaintiff due process. Plaintiff's complaint alleges only that the commissioners "were in positions of responsibility with regard to the County's customs and practices, and knew or should have known of the aforementioned misconduct, but failed to act to prevent harm." Appellants' App. at 7–8. In her appellate brief, plaintiff argues that the commissioners were deliberately indifferent to ensuring her due process rights were not violated. She also argues that as supervisors, their "continued inaction in the face of constitutional abuses provides an independent basis for finding [that they were] deliberately indifferent or acquiesced in the constitutionally offensive conduct of [their] subordinates." Answer Brief on Appeal at 17.

■ Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence. *Woodward v. City of Worland,* 977 F.2d 1392, 1399 (10th Cir. 1992). "[S]upervisory liability requires 'allegations of personal direction or of actual knowledge and acquiescence.'" *Id.* at 1400 (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1478 (3d Cir.1990)). Plaintiff has failed to meet this requirement with respect to the commissioners. At best, plaintiff makes only conclusory allegations that the commissioners were deliberately indifferent to violations of her due process rights. As stated earlier, she provided no evidence that the commissioners were aware of or involved in the process she received when being terminated. She asserts that the commissioners were in office when the Sweeney case went to trial and that they approved the $425,000 settlement because they were told that the district court was ready to direct a verdict for the plaintiff on his due process claim.[3] We conclude that plaintiff has not raised an issue of material fact concerning deliberate indifference on the part of the commissioners, and therefore reverse the district court's denial of qualified immunity for the commissioners on plaintiff's due process claim.

## V

■ Plaintiff's third claim relevant to the qualified immunity inquiry is that defendants conspired to injure her for having testified at the Sweeney trial and thus violated 42 U.S.C. § 1985(2). Although defendants contend that plaintiff does not have standing to assert a § 1985(2) claim because she was not a party in the Sweeney case, we do not agree. We have noted that § 1985(2) creates four distinct causes of action, one of which is for conspiring "to

---

3. Plaintiff refers us to excerpts from two of the commissioners' depositions contained in the Supplemental Appendix she filed as support for her deliberate indifference argument. These excerpts were not part of the district court record, and defendants have moved to strike this evidence on that basis. *See Ambus v. Granite Bd. of Educ.,* 975 F.2d 1555, 1569 (10th Cir.1992), *reh'g en banc granted on other grounds; cf. United States v. Gilmore,* 698 F.2d 1095, 1097 (10th Cir.1983). Plaintiff argues that we should consider these materials because this is an extraordinary situation—an interlocutory appeal where discovery is ongoing and the critical evidence was not available until after the district court had ruled. Because qualified immunity can be raised at any time and a district court may enter summary judgment on that ground "at any point before trial" at which it is appropriate, *Mee v. Ortega,* 967 F.2d 423, 430 n. 5 (10th Cir.1992), there may be some merit in considering evidence on appeal not part of the district court record or at least in remanding the case so the district court can consider the new evidence. We need not decide that issue here because after reviewing plaintiff's Supplemental Appendix, we would not change our conclusion that plaintiff has not presented valid evidence of deliberate indifference. We therefore deny defendants' motion to strike as moot and leave the issue of newly discovered evidence relevant to an interlocutory appeal for another day.

injure such party or witness [who has testified in any court of the United States] in his person or property on account of his having so attended or testified." *Wright v. No Skiter Inc.*, 774 F.2d 422, 425 (10th Cir.1985) (internal quotation omitted). This law was clearly established at the time defendants allegedly violated it.

■ However, plaintiff has not sufficiently alleged or shown the necessary existence of a conspiracy. Plaintiff's complaint fails to allege any agreement or concerted action among defendants to intimidate her for her Sweeney testimony. *See Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir.1990) (appendix) ("[A]llegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."); *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230–31 (10th Cir.1990) (affirming summary judgment against plaintiff on § 1985(2) claim where plaintiff failed to establish "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants"). We therefore reverse the district court's denial of qualified immunity to the commissioners, Millsap, and Brodersen on plaintiff's § 1985(2) claim.

### VI

In summary, we REVERSE the district court's denial of qualified immunity to defendants Valente, Nelms, and Kite as to all of plaintiff's claims; we AFFIRM the district court's denial of qualified immunity to defendant Brodersen on plaintiff's due process claim, but REVERSE the district court as to the First Amendment and conspiracy claims against Brodersen; and we AFFIRM the district court's denial of summary judgment to defendant Millsap on plaintiff's First Amendment and due process claims but REVERSE as to the conspiracy claim. We also DENY defendants' motion to strike and plaintiff's motion to expedite as moot.