35 F.3d 574
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Helen METZNER, Plaintiff-Appellant,
v.
Gerald STUYVESANT, in his individual capacity and official
capacity as Director of the New Mexico Workers'
Compensation Administration; State of
New Mexico, Defendants-Appellees.
Helen METZNER, Plaintiff,
and
Philip P. Baca, Attorney-Appellant,
v.
Gerald STUYVESANT, in his individual capacity and official
capacity as Director of the New Mexico Workers'
Compensation Administration; State of
New Mexico, Defendants-Appellees.
Philip B. BACA, Attorney-Appellee,
v.
Gerald STUYVESANT, in his individual capacity and official
capacity as Director of the New Mexico Workers'
Compensation Administration, Defendant-Appellant,
and
State of New Mexico, Defendant.
 Nos. 93-2301, 93-2302, 93-2305.
 United States Court of Appeals, Tenth Circuit.
 Aug. 26, 1994.
 
 1
 Before LOGAN and BARRETT, Circuit Judges, and RUSSELL,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 3
 In No. 93-2301, plaintiff Helen Metzner appeals the district court's grant of summary judgment on her claim that she was denied a promotion in retaliation for engaging in speech protected by the First Amendment. She argues that her refusal to sign a false affidavit was protected speech and that there is a factual dispute whether this speech motivated defendant Gerald Stuyvesant's decision to deny her a promotion. Plaintiff also argues that the State of New Mexico was a proper defendant. Because the evidence presents a genuine issue of material fact as to her superior's motivation, we reverse the judgment in favor of defendant Stuyvesant and remand for further proceedings. We affirm the dismissal in favor of the State.
 
 
 4
 In No. 93-2302, plaintiff's attorney, Philip Baca, appeals the district court's assessment of attorney fees against him under Fed.R.Civ.P. 11 and 42 U.S.C.1988. He argues that the case had a basis both in fact and law. In No. 93-2305, defendant Stuyvesant appeals the amount of attorney fees awarded to him. He argues that the court did not make sufficient findings to support the reduced award. Because we reverse the district court's decision that plaintiff's case was without basis, we must reverse the attorney fee determinations as well.
 
 
 5
 Plaintiff was employed as a systems analyst for the New Mexico Workers' Compensation Administration (Administration) from November 1986 until April 1993. In October 1990, the Administration director, defendant Stuyvesant, informed her that she would be promoted to a supervisory position, classified as Systems Analyst II, in the Systems Bureau.
 
 
 6
 At that time, Stuyvesant was involved in a lawsuit with a former employee who alleged she was fired for disclosing Stuyvesant's illegal conduct. Stuyvesant's attorney approached plaintiff and asked her to sign an affidavit to the effect that plaintiff had heard rumors spread by the former employee during the time that the former employee worked for the Administration. Plaintiff alleges that she refused to sign the affidavit because she believed she heard the rumors about defendant's conduct only after the former employee was terminated.
 
 
 7
 Shortly thereafter, the State Personnel Office made sweeping changes to its employment classification system, including elimination of the job classification that had been promised to plaintiff. The Administration then created a new supervisory position in the Systems Bureau, classified as a Program Manager. Although plaintiff was one of the three candidates recommended for the new position, Stuyvesant chose another candidate.
 
 
 8
 Plaintiff brought a civil rights action in state court against Stuyvesant and the State of New Mexico. After the case was removed to federal court, the district court granted summary judgment in favor of defendant Stuyvesant on the ground that plaintiff did not engage in protected speech, and alternatively, even if she did, there was no evidence that Stuyvesant's failure to promote plaintiff was motivated by her exercise of such speech. The court also granted the State's motion to dismiss on the ground that there is no 1983 liability for a state. After determining plaintiff's claims to be frivolous, the court awarded defendant Stuyvesant a portion of his requested fees. These appeals followed.
 
 
 9
 We review a grant of summary judgment de novo, applying the same standards used by the district court. Pride v. Does, 997 F.2d 712, 716 (10th Cir.1993). Summary judgment is appropriate when "the pleadings [and] depositions ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In First Amendment cases, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Melton v. City of Oklahoma City, 879 F.2d 706, 713 (10th Cir.1989) (quotations omitted), reh'g granted in part on other grounds, 928 F.2d 920 (10th Cir.), cert. denied, 112 S.Ct. 296, 297 (1991).
 
 
 10
 A public employee alleging a retaliatory employment decision for exercising her First Amendment rights must first demonstrate that the speech in question was protected speech. Langley v. Adams County, 987 F.2d 1473, 1479 (10th Cir.1993). This invokes a two-part test: (1)was the speech on a matter of public concern; and if so, (2)does the employee's interest in engaging in the speech outweigh the state's interest in promoting the effective functioning of its public services. Id. These two inquiries involve questions of law. Melton, 879 F.2d at 713. Once the plaintiff has demonstrated that the speech in question was protected, she must then show that the protected speech was a "motivating factor" in the challenged employment decision. Id. If plaintiff makes this factual showing, "the burden then shifts to the employer to show by a preponderance of the evidence that it would have reached the same decision in the absence of the protected activity." Id.
 
 
 11
 As a threshold matter, we note that plaintiff's refusal to sign an affidavit to be used in a legal proceeding containing an allegedly false fact was speech. The right to testify truthfully is protected by the First Amendment, Langley, 987 F.2d at 1479; Melton, 879 F.2d at 714; logically, the right not to give false testimony is speech as well. See Wooley v. Maynard, 430 U.S. 705, 714 (1977) (holding that First Amendment "includes both the right to speak freely and the right to refrain from speaking at all").
 
 
 12
 We now examine whether plaintiff's refusal to sign the affidavit was protected speech. We first determine whether the speech touched upon a matter of public concern, that is, if it relates to a topic of "political, social, or other concern to the community." Melton, 879 F.2d at 713 (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). In this analysis we focus on whether the speech discloses evidence of corruption, impropriety, or other malfeasance on the part of government officials in the conduct of their official duties. McEvoy v. Shoemaker, 882 F.2d 463, 466 (10th Cir.1989). The affidavit was intended as proof on the issue of whether a public employee was terminated for disclosing illegal conduct, a matter of public concern. See Langley, 987 F.2d at 1479 (public employee's testimony supporting former employee's wrongful termination action against public employer was speech on a matter of public concern). Thus, plaintiff's refusal to sign the affidavit constituted speech on a matter of public concern. Cf. Melton, 879 F.2d at 714 (police officer's contact with accused's attorney and his subsequent trial testimony constituted speech on an issue of public concern because it was intended to reveal exculpatory evidence which may otherwise have been suppressed by prosecutor).
 
 
 13
 Once we have determined that plaintiff's speech touched upon a matter of public concern, we must then balance the interests of the employee in engaging in the free expression (here, refusal to sign the affidavit) "against the public employer's interest in the effective and efficient fulfillment of its responsibilities to the public." Melton, 879 F.2d at 713 (quoting Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)). Here, neither defendant has offered any countervailing state interests to be balanced against plaintiff's right to not testify falsely; therefore, we conclude that plaintiff met her burden of showing that she engaged in protected speech.
 
 
 14
 We next examine whether plaintiff's evidence raised a factual dispute regarding whether her speech was a "motivating factor" in defendant Stuyvesant's decision to deny her the promotion. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Only admissible evidence may be considered when ruling on a summary judgment motion. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir.), cert. denied, 474 U.S. 823 (1985). As plaintiff's affidavit contained many hearsay statements that would be inadmissible, we must determine whether the remaining evidence created a triable issue regarding causation.
 
 
 15
 The district court treated as dispositive the undisputed fact that defendant Stuyvesant had nothing to do with the abolition of the Systems Analyst II position promised to plaintiff. The focus of this case, however, is whether Stuyvesant's subsequent failure to promote plaintiff to the newly-created Program Manager position was motivated by plaintiff's refusal to sign the affidavit. We conclude that plaintiff sufficiently met her burden on the causation issue to create a triable issue for the jury.
 
 
 16
 Viewing the evidence in a light most favorable to plaintiff, the record shows that: (1)in October 1990, the Administration was being reorganized, Appellant's App. at 60-61; (2)the committee responsible for developing reorganization plans identified the need for a supervisory position in the Systems Bureau and recommended that a systems analyst position be upgraded to include such duties, id. at 61, 142; (3)defendant Stuyvesant told plaintiff that she would be promoted into the new position, id. at 78, 147; (4)plaintiff refused to sign the affidavit, id. at 146; (5)Stuyvesant was angered by this perceived "disloyalty" and made his displeasure known to both plaintiff and her supervisor, id. at 62, 79, 140; (6)the State Personnel Office abolished the Systems Analyst II classification statewide, id. at 63-64, 70-71; (7)the Administration created a Program Manager position and assigned it the same supervisory duties that originally were to be performed by the Systems Analyst II, id. at 65, 73, 143-44, 147-48; (but see id. at 173-74); (8)plaintiff was interviewed and recommended as qualified for the position, id. at 90, 93; (9)after receiving a list in which only plaintiff was recommended, id. at 82, 92-93, Stuyvesant requested that the established selective criteria be modified to attract more candidates, id. at 97; (10)Stuyvesant, who had previously agreed to promote plaintiff to a supervisory position in the Systems Bureau, refused to promote her into the new position, id. at 68, 83; and (11)the person hired into the Program Manager position was not fully qualified, id. at 149, 179 (supervisor's deposition statement that person hired did not know particular data base but could "pick it up real quickly").
 
 
 17
 Taking all inferences from this evidence in favor of plaintiff, a jury could reasonably conclude that Stuyvesant's failure to promote plaintiff into the Program Manager position was motivated, at least in part, by her refusal to sign the affidavit. Further, the evidence presents a significant factual dispute whether the newly-created Program Manager position was the same as the position promised to plaintiff, that is, whether it entailed the same duties as those intended to be performed by the System Analyst II. Any arguments about the weakness of plaintiff's case should be addressed to the trier of fact at trial. The district court did not address the fourth part of the test--whether Stuyvesant would have reached the same decision absent the protected activity. But that is a fact issue for the jury in any event.
 
 
 18
 We discuss the remaining issues briefly. The United States Supreme Court has made it clear that a state may not be sued in its own name, either for damages or prospective relief, under 42U.S.C.1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 66 (1989) (holding that states are not "persons" under 1983, and that 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties"); Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985) (noting that unless Eleventh Amendment immunity is waived, "a State cannot be sued directly in its own name regardless of the relief sought"). Even a cursory review of the cases cited by plaintiff reveals that it is only a state official who can be sued for equitable relief, because " 'official-capacity actions for prospective relief are not treated as actions against the State.' " Will, 491 U.S. at 71 n. 10 (quoting Graham, 473 U.S. at 167 n. 14).
 
 
 19
 We do not address defendant Stuyvesant's arguments concerning the attorney fees award. Because plaintiff's claims against Stuyvesant were grounded in both law and fact, the district court's finding of frivolousness must be reversed.
 
 
 20
 AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings.
 
 
 
 **
 Honorable David L. Russell, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470