**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARIE GASTON, Surviving Parent
and Administratrix of the Estate of
Jeffrey Ray Belden,

      Plaintiff-Appellant-
      Cross-Appellee,

v.

WARREN PLOEGER, individually
and as County Commissioner of
Brown County, Kansas; GLEN
LEITCH, individually and as County
Commissioner of Brown County,
Kansas; STEVE ROBERTS,
individually and as County
Commissioner of Brown County,
Kansas; LAMAR SHOEMAKER,
individually and as Sheriff of
Brown County, Kansas; BRETT
HOLLISTER; JOHN DOES, unknown
and unidentified employee(s) of
Brown County, Kansas; JANE DOES,
unknown and unidentified employee(s)
of Brown County, Kansas; BRANDON
ROBERTS,

      Defendants-Appellees-
      Cross-Appellants.

Nos. 08-3028 & 08-3033
(D.C. No. 2:04-CV-02368-DJW)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

(continued...)

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

Jeffrey Ray Belden committed suicide on August 14, 2002, while he was incarcerated as a pretrial detainee in Brown County, Kansas. Thereafter, Mr. Belden's mother, plaintiff-appellant Marie Gaston, brought this lawsuit on his behalf asserting: (1) 42 U.S.C. § 1983 claims that various Brown County officials were deliberately indifferent to the risk that Mr. Belden would commit suicide; and (2) state-law negligence claims. Defendants moved for summary judgment on the § 1983 claims based on qualified immunity and on the state-law claims based on immunity. The district court granted the motion with respect to the § 1983 claims against County Commissioners Warren Ploeger, Glen Leitch, and Steve Roberts, but denied the motion with respect to the § 1983 claims against Sheriff Lamar Shoemaker, Sergeant Brett Hollister, and Officer Brandon Roberts. The court also denied summary judgment as to all defendants on plaintiff's state-law claims.

Sheriff Shoemaker and Sergeant Hollister then appealed the district court's decision denying them qualified immunity with regard to plaintiff's § 1983

[*](...continued)
ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

claims. In an unpublished order and judgment, another panel of this court reversed the district court's denial of qualified immunity for Sheriff Shoemaker and Sergeant Hollister and remanded the case with a mandate for the district court to enter summary judgment in their favor on plaintiff's federal constitutional claims. *See Gaston v. Ploeger*, 229 F. App'x 702, 704, 710-13 (10th Cir. 2007). However, because Officer Brandon Roberts' name did not appear in the text or caption of the notice of appeal filed on behalf of Sheriff Shoemaker and Sergeant Hollister, the panel concluded that it lacked jurisdiction to consider whether Officer Roberts was entitled to summary judgment based on qualified immunity. *Id.* at 708-09. Nonetheless, the panel noted that, "[o]f course, Officer Roberts may again assert qualified immunity later in the [remand] proceedings. *See Langley v. Adams County*, 987 F.2d 1473, 1481 n.3 (10th Cir. 1993). Nothing we say here is meant to indicate any opinion about whether Officer Roberts is entitled to qualified immunity." *Id.* at 709 n.5.

In the remand proceedings before the district court, plaintiff's remaining claims were her § 1983 claim against Officer Roberts and her state-law negligence claims against all defendants. As expressly permitted by an amended pretrial order that the district court entered following this court's remand, *see* Aplt. App., Vol. III, Tab 15 at 400, Officer Roberts then filed: (1) a motion to dismiss all of plaintiff's claims on the grounds of lack of personal jurisdiction and statute of limitations; and (2) a second motion for summary judgment on

plaintiff's § 1983 claim based on qualified immunity. In addition, all of the defendants filed a motion asking the district court to decline to exercise supplemental jurisdiction over plaintiff's state-law claims. In a thorough and well-reasoned memorandum and order, the district court denied Officer Roberts' motion to dismiss, but granted his second motion for summary judgment. *See Gaston v. Ploeger*, No. 04-2368-DJW, 2008 WL 169814, at *1-6, *14 (D. Kan. Jan. 17, 2008). The court also declined to exercise supplemental jurisdiction over plaintiff's state-law claims, and it dismissed those claims without prejudice. *Id.* at *16. Plaintiff is now appealing the grant of summary judgment in favor of Officer Roberts and the dismissal of her state-law claims, and Officer Roberts is cross-appealing the denial of his motion to dismiss. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the grant of summary judgment in favor of Officer Roberts on plaintiff's § 1983 claim and dismiss his cross-appeal as moot. We also affirm the dismissal of plaintiff's state-law claims.

## I. Background.

The background facts pertaining to Mr. Belden's suicide, which are either undisputed or viewed in the light most favorable to plaintiff's case, are set forth in detail in: (1) the order and judgment that was entered in the prior appeal to this court, *see Gaston*, 229 F. App'x at 704-07; and (2) the memorandum and order entered by the district court in January 2008, *see Gaston*, 2008 WL 169814,

at *6-9.  We will assume a working familiarity with the background facts

pertaining to Mr. Belden's suicide, and we will not repeat those facts here.

## II.  Standard of Review.

"This court reviews the district court's summary judgment decision

*de novo*, viewing the evidence in the light most favorable to the non-moving

party; in this case, in [plaintiff's] favor."  *Herrera v. Lufkin Indus., Inc.*, 474 F.3d

675, 679-80 (10th Cir. 2007).  Summary judgment is appropriate "if the

pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

We review the district court's decision to decline to exercise supplemental

jurisdiction over plaintiff's state-law claims for an abuse of discretion.  *Exum v.*

*U.S. Olympic Comm.*, 389 F.3d 1130, 1139 (10th Cir. 2004).  In accordance with

28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise

supplemental jurisdiction over a state-law claim if "the district court has

dismissed all claims over which it has original jurisdiction."  *See also Smith v.*

*City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)

("When all federal claims have been dismissed, the court may, and usually

should, decline to exercise jurisdiction over any remaining state claims."); *Ball v.*

*Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (noting that, when a state-law claim is

no longer supplemental to any federal question claim, "the most common

response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice").

### III. Qualified Immunity and Deliberate Indifference Standard.

As noted above, Officer Roberts moved for summary judgment on plaintiff's § 1983 claim based on the doctrine of qualified immunity. When a defendant in a § 1983 case has asserted qualified immunity, the burden shifts to the plaintiff to establish that: (1) the defendant violated a constitutional right; and (2) at the time of the incident, it was clearly established that the defendant's conduct amounted to a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc). Here, the district court granted summary judgment in favor of Officer Roberts because it concluded that plaintiff had put forth insufficient evidence to establish that Officer Roberts violated a constitutional right belonging to Mr. Belden on the day he committed suicide. *See Gaston*, 2008 WL 169814, at *14. As a result, the court did not need to address the second prong of the qualified-immunity inquiry.

In the prior appeal to this court, we summarized the legal standards that govern claims arising from prisoner suicides as follows:

> Although "neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners[,t]hey are, . . . responsible for taking reasonable measures to [e]nsure the safety of inmates." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (internal citation omitted). Accordingly, a jailer violates the Eighth

-6-

Amendment if he shows deliberate indifference to a convicted inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection as that afforded convicted inmates under the Eighth Amendment." *Frohmader [v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992)]; *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

Claims arising from a failure to prevent prisoner suicide "are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie [v. Grand County, Utah*, 119 F.3d 862, 866 (10th Cir. 1997)]. Thus, a plaintiff bringing such a claim must prove that his jailer was "deliberately indifferent to a substantial risk of suicide." *Id.* at 869 (internal quotation marks omitted). "Deliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component of the test is met if the harm suffered was sufficiently serious. *Id.* Obviously, suicide satisfies this requirement. *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) ("[I]t goes without saying that suicide is a serious harm.").

The subjective component of the test requires a showing that the defendant acted with a culpable state of mind. In *Farmer v. Brennan*, the Supreme Court observed that the required mens rea lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." 511 U.S. at 836. The Court then held that "a prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Court made clear that the defendant's knowledge of a substantial risk may be proven by circumstantial evidence, including evidence "that the risk was obvious." *Id.* at 842. However, the threshold for obviousness is very high.

*Gaston*, 229 F. App'x at 709-10 (parallel citations omitted).

-7-

## IV. Analysis.

As noted above, the district court initially concluded that neither Officer Roberts nor Sergeant Hollister were entitled to qualified immunity on plaintiff's § 1983 claims. In its subsequent memorandum and order granting summary judgment in favor of Officer Roberts, the district court explained its initial reasoning as follows:

> [T]his Court acknowledged that both Officer Roberts and Sergeant Hollister denied knowledge of Belden's inclination toward suicide. With that said, however, the Court found there was a genuine issue of material fact regarding whether the risk of Belden committing suicide was so substantial or pervasive that knowledge by Officer Roberts and Sergeant Hollister could be inferred. More specifically, the Court concluded that the . . . evidence was sufficient for a jury to find that Belden was exhibiting strong signs of suicidal tendencies, that these two jail officials had actual – or inferred – knowledge of, or were wilfully blind to, the specific risk that Belden would commit suicide, and that these jail officials then failed to take steps to address that known and specific risk[.]

*Gaston*, 2008 WL 169814, at *11.

As also noted above, Sergeant Hollister, Officer Roberts' immediate supervisor, appealed the district court's decision that he was not entitled to qualified immunity. On appeal, another panel of this court concluded that the evidence in the record, viewed in the light most favorable to plaintiff, failed to establish that Sergeant Hollister was deliberately indifferent to the risk that Mr. Belden would commit suicide. The panel therefore reversed the district court's denial of qualified immunity for Sergeant Hollister and directed that

-8-

summary judgment be entered in his favor. Because its analysis is dispositive of Officer Roberts' current appeal, we quote and incorporate herein the entirety of the panel's reasoning regarding Sergeant Hollister:

> The magistrate judge denied Sergeant Hollister's motion for summary judgment because "the evidence presented raises a genuine issue of material fact regarding whether Plaintiff can establish . . . (1) whether Defendant Hollister . . . had knowledge of the specific risk that Belden would attempt to commit suicide; or (2) whether the evidence demonstrates that the risk of Belden committing suicide was so substantial or pervasive that knowledge by [Sergeant Hollister] can be inferred." He contends that the evidence in the record, viewed in the light most favorable to Ms. Gaston, cannot establish that he was deliberately indifferent to the risk that Mr. Belden would kill himself. We agree.
>
> The magistrate judge relied on the following evidence in reaching the conclusion that Sergeant Hollister was not entitled to qualified immunity: (1) Mr. Belden's cellmates observed suicidal behavior and heard him discussing suicide; (2) Mr. Belden was not a disciplinary problem until the day of his death; (3) Mr. Belden received a letter from Ms. Renz on the day of his death and Sergeant Hollister was aware of the receipt and contents of the letter; (4) Sergeant Hollister had training in detecting suicidal inmates; (5) Sergeant Hollister placed Mr. Belden in a single-person cell; (6) Mr. Belden plugged the toilet in his new cell; (7) Officer Roberts told Sergeant Hollister about Mr. Belden's continued insubordination between 4:00 and 6:40 p.m.; (8) Sergeant Hollister instructed Officer Roberts to remove the paper from Mr. Belden's cell window and transfer him to Cell 14; (9) Cell 14 was the suicide watch cell; and (10) Sergeant Hollister never followed-up with Officer Roberts to check on the situation with Mr. Belden.
>
> Much of this evidence has no bearing on whether Sergeant Hollister knew that Mr. Belden was suicidal. For example, the magistrate judge noted that there was no evidence that Sergeant Hollister was aware of the suicidal behavior observed by Mr. Belden's cellmates. Indeed, the inmates uniformly stated that they had not told any jail officials about their observations because

-9-

they did not believe Mr. Belden was suicidal. Nevertheless, the magistrate judge believed that a jury could find that:

> [I]f the jailers had been properly monitoring the inmates, the jailers would have heard Belden talk about suicide, would have observed Belden give away his food, would have watched Belden repeatedly rock back and forth on his bed, and would have noticed Belden tying his shoelaces together to test the ability of the shoelaces to hold his body weight.

This is hardly a proper inference to be drawn from the evidence because it presumes that jailers have a constitutional duty to monitor inmates constantly. However, jailers are neither obligated nor able to watch every inmate at every minute of every day. The record is clear that Sergeant Hollister and his colleagues were not aware of the strange behavior described by Mr. Belden's cellmates. Under these circumstances, we would not permit a jury to infer that their failure to notice contributed to the "higher degree of fault than negligence" required for deliberate indifference. *Berry v. City of Muskogee*, 900 F.2d 1489, 1495 (10th Cir. 1990).

With respect to the letter from Ms. Renz, Sergeant Hollister testified that:

> A. He received a letter through the mail. It had been logged in by the jailers.
>
> Q. That letter, did anyone at the jail look at that before they gave it to him?
>
> A. Apparently so because the other dayshift jailer had mentioned it to me that . . . [Ms. Renz] wanted to know why he wouldn't come to the window when she honked.
>
> Q. Did you ever observe that letter?
>
> A. I don't remember.

The letter is not in the record, and nothing in the record further illuminates its contents. Nevertheless, the magistrate judge seemingly presumed that it was a "Dear John" letter. This is pure

-10-

speculation that finds no support in the record. According to Deputy Brammer, Ms. Renz arrived at the hospital soon after Mr. Belden was taken there. She told the emergency room physician that she had spoken with Mr. Belden the day before and that "[h]e told her that he loved her but did not make any suggestion that he might be particularly depressed or suicidal." From this evidence, a jury would have no basis for inferring that there was anything amiss in Mr. Belden's relationship with Ms. Renz, let alone that the defendants were aware of it and deliberately indifferent to its effect on his mental state.

Sergeant Hollister admitted that Mr. Belden was generally a well-behaved inmate prior to August 14, 2002, and he agreed that a sudden shift in behavior can be a harbinger of suicide. However, he testified unequivocally that Mr. Belden's behavior did not dramatically change on the day he ended his life, and he viewed Mr. Belden's conduct as a disciplinary issue only. He explained: "I didn't know he was suicidal. . . . [H]e was just being uncooperative because he didn't want to be removed from that cell because I believe that that [sic] window had been altered to get contraband into the facility, so he didn't want to move because of possibly getting contraband." Sergeant Hollister further testified that, in light of his drug history, Mr. Belden could be expected to be angry about being moved into a cell in which he would not be able to receive contraband. Still, "[h]e wasn't that upset when I moved him. He argued the point. He said well I don't want to move. . . . He was never out of control. He did not yell or scream."

Nevertheless, Sergeant Hollister later ordered Officer Roberts to move Mr. Belden to Cell 14, the suicide watch cell. He also chose not to call Officer Roberts to verify that his orders had been carried out because "I didn't believe there would be a problem with him later. If he had a second jailer or an officer [with Officer Roberts] I didn't feel there was going to be a problem. He had already complied when two people were there."

Certainly, a jury would be entitled to disbelieve Sergeant Hollister's testimony. However, the rigorous deliberate indifference standard requires knowledge that an inmate is suicidal or a risk that is so obvious and substantial that knowledge can be inferred. We would not permit a jury to infer knowledge simply from the fact that

-11-

Sergeant Hollister instructed Officer Roberts to move Mr. Belden to Cell 14 because it is undisputed that Cell 14 was not solely used as a suicide watch cell. Moreover, the record contains no evidence that Mr. Belden's behavior was unusual for an inmate, especially an inmate who had been deprived of his access to contraband and moved to an isolated cell without a working television. Sergeant Hollister's suicide prevention training left him sensitive to clues of possible suicide, but there is no evidence that Mr. Belden exhibited any of these tendencies. He simply was not an obvious suicide risk. Because there is no evidence that Sergeant Hollister considered Mr. Belden suicidal, he could not have been deliberately indifferent to the risk of suicide. Accordingly, we conclude that he is entitled to qualified immunity.

*Gaston*, 229 F. App'x at 710-12 (citations to prior record on appeal omitted).

Following this court's remand back to the district court, Officer Roberts filed his second motion for summary judgment based on qualified immunity. In light of this court's grant of summary judgment in favor of Sergeant Hollister, the district court granted the motion, reasoning as follows:

Upon consideration of Brandon Roberts' second motion for summary judgment, and applying the analysis set forth by the Court of Appeals in its opinion to the undisputed facts, the Court has no choice but to find that Brandon Roberts, like Sergeant Hollister, is entitled to qualified immunity. In support of this conclusion, the Court refers to the following unequivocal findings by the Tenth Circuit in its opinion: First, a jailer does not have a constitutional duty to monitor inmates constantly, and thus it would be improper to permit a jury to infer that a jailer's failure to notice contributed to the "higher degree of fault than negligence" required for deliberate indifference. Second, there is no evidence to suggest the letter from Belden's fiancé was a "Dear John" letter, and thus a jury would have no basis for inferring that there was anything amiss in Belden's relationship with his fiancé, let alone that any jailer was aware of it and deliberately indifferent to its effect on Belden's mental state. Third, given the deliberate indifference standard requires knowledge that an inmate is suicidal or a risk that is so obvious and substantial

that knowledge can be inferred, the Court of Appeals held it would not permit a jury to infer knowledge that Belden was suicidal simply from the fact that Sergeant Hollister instructed Officer Roberts to move Belden to Cell 14. More specifically, the Court of Appeals found Cell 14 was not solely used as a suicide watch cell and that the record contains no evidence that Belden's behavior was unusual for an inmate.

Although made in support of the decision that Officer Hollister is entitled to qualified immunity, there is no question that each of the findings made by the Tenth Circuit in its opinion apply just as equally to Defendant Brandon Roberts. Although this Court previously made contrary findings under the facts presented and the applicable law, these findings are not now cognizable given the Court's obligation under the Tenth Circuit's mandate to accept and apply the Court of Appeals' determination. Accordingly, this Court finds that Brandon Roberts is entitled to qualified immunity and summary judgment will be granted in his favor with regard to Plaintiff's 42 U.S.C. § 1983 claims.

*Gaston*, 2008 WL 169814, at *14 (footnote omitted).

We fully agree with the district court's well-reasoned analysis, and we reject out of hand plaintiff's argument that the district court erred in allowing Officer Roberts to file a second motion for summary judgment. *See Langley*, 987 F.2d at 1481 n.3 (stating that "qualified immunity can be raised at any time and a district court may enter summary judgment on that ground 'at any point before trial' at which it is appropriate") (quoting *Mee v. Ortega*, 967 F.2d 423, 430 n.5 (10th Cir. 1992)). That said, we commend plaintiff's counsel for the quality of the briefs submitted to this court on plaintiff's behalf. Nonetheless, as defense counsel has succinctly argued, the deliberate indifference standard presents an insurmountable hurdle for plaintiff's claims against Officer Roberts:

-13-

[P]laintiff's [appellate] argument[s] center[] around her accusations of what Officer Roberts should or should not have done with regard to removing the paper from Mr. Belden's window, whether he notified dispatch of the need for a deputy to assist him, whether he interviewed other inmates, and exactly how long the paper covered Mr. Belden's cell window. This second guessing is wholly irrelevant, however, to the issue of whether Officer Roberts was deliberately indifferent to a known risk that Mr. Belden would commit suicide. A conclusion that Officer Roberts should have done more is insufficient, because the constitutional claims require a showing much higher than what is required for mere negligence. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. 838.

Aplees. Br. at 28-29.

Finally, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over plaintiff's state-law negligence claims. After the district court granted summary judgment in favor of Officer Roberts, there were no remaining federal question claims in the case, and plaintiff has never sought to establish diversity of citizenship jurisdiction with regard to her state-law claims. Under those circumstances, 28 U.S.C. § 1367(c)(3) expressly permits a district court to decline to exercise supplemental jurisdiction over any remaining state-law claims, and we have repeatedly recognized that this is the preferred practice. *See, e.g., Smith*, 149 F.3d at 1156; *Ball*, 54 F.3d at 669.

-14-

The judgment of the district court is AFFIRMED.  Officer Roberts'
cross-appeal is DISMISSED as moot.

Entered for the Court

Bobby R. Baldock
Circuit Judge