**UNITED STATES COURT OF APPEALS**
**Filed 12/20/96**
**TENTH CIRCUIT**

ROBERT D. NISSEN,

      Plaintiff - Appellee,

v.

JOHN SILBAUGH; WILLIAM
HETTGAR; DUANE SHILLINGER,

      Defendants - Appellants.

Nos. 95-8037 & 95-8041

D. Wyoming

(D.C. No.94-CV-256)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **LOGAN**, and **MURPHY**, Circuit Judges.

Former Wyoming state penitentiary prisoner Robert D. Nissen brought this 42 U.S.C. § 1983 action against certain corrections personnel, alleging that they violated his civil rights by failing to protect him from being stabbed by another inmate. The defendants moved for summary judgment, asserting that Nissen failed to state a claim

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.

under the Eighth Amendment, and that they are shielded by qualified immunity. The district court denied the motions.[1] In this interlocutory appeal, defendants contend that the district court erred in finding that a genuine issue of material fact precluded summary judgment on the issue of whether the conduct which Nissen alleges violated clearly established law. We consolidate Silbaugh's appeal with Hettgar's and Shillinger's. For the reasons stated below, we reverse as to Silbaugh and Hettgar, and we dismiss the appeal as to Shillinger.

## JURISDICTION

Nissen has filed a motion to dismiss this interlocutory appeal, contending that "a district court's denial of summary judgment in a 'qualified immunity' case which determined the existence of genuine issues of material fact is not a 'final decision' within the meaning of 28 U.S.C. § 1291." Appellee's Motion to Dismiss at 4 (citing Johnson v. Jones, 115 S. Ct. 2151, 2156 (1995)). However, as defendants correctly respond, Johnson did not abridge appellate review of an interlocutory appeal as to purely legal issues. Johnson, 115 S. Ct. at 2156 (approving appeal from the "'denial of a claim of qualified

---

[1] In its order, the district court also ruled on plaintiff's motion to amend his complaint, allowing the amendment to the extent that it dropped four defendants, added one defendant, and made certain changes in characterizing defendants' conduct. Silbaugh's App. at 31-32.

immunity, *to the extent that it turns on an issue of law*'" (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530 (1985) and adding emphasis)).  Thus, we have jurisdiction.

## BACKGROUND

A.  <u>Nissen's Statement of Facts</u>.[2]  Duane Shillinger was the warden at the Wyoming State Penitentiary.  William Hettgar was an associate warden who had responsibility for the kitchens.  John Silbaugh was the weekend civilian supervisor in the maximum security unit kitchen.  Nissen was an inmate in the maximum security unit and an inmate-worker in the kitchen.

In early 1993, Nissen informed prison officials that other inmates in the maximum unit were smuggling in drugs during conjugal visits.  When prison officials began to investigate the drug use, they transferred Nissen to a new cell, thereby causing him to be identified as a "snitch."  Thereafter, Nissen received numerous threats to his life.  He informed Warden Shillinger about them, and Shillinger promised to get Nissen out to a work release program as soon as possible.  However, Nissen did not inform Hettgar or Silbaugh.  On Saturday, February 20, 1993, Nissen was working in the kitchen under Silbaugh's supervision.

According to prison policy, inmates had to be cleared to work in the kitchen through a classification system.  Prison policy also specified that knives were to be

---

[2]For purposes of appeal, defendants do not dispute Nissen's statement of facts.

secured whenever the supervisor left the kitchen. Both Shillinger and Hettgar knew of the knife policy, but failed to inform the affected kitchen staff. Consequently, Silbaugh did not know the policy. Silbaugh handed out a knife to inmate-kitchen worker, Arlan Flores, whom he had hired without going through the classification process. Flores was in prison for stabbing his half brother to death. When Silbaugh left to deliver food,[3] Flores stabbed Nissen.

B. Other Undisputed Facts. There had been no incident of knife violence in the kitchen for twenty-five years. Silbaugh App., Ferguson Dep. at 71.1, 73. None of the supervisors directly in charge of the kitchen knew of the knife policy, and it was common practice to leave inmates unsupervised with knives. Appellee's Supp. App., Haag Dep. at 117-18, 122; Id., McMacken Dep. at 134-35. Flores had worked periodically in the

---

[3]Silbaugh testified that he was gone for about 45 seconds to a minute. Appellee's Supp. App. at 170; Silbaugh's App. at 54. Flores testified that Silbaugh was gone for 10 to 15 minutes. Appellee's Supp. App. at 104. At Nissen's deposition, his own counsel specifically asked him which statement was correct:

Q: [Mr. Buck] I also understand Mr. Flores to have testified under oath that Mr. Silbaugh was gone for 10 or 15 minutes. I believe Mr. Silbaugh testified it was more like 45 seconds to 60 seconds. How long a period of time do you remember from when Mr. Silbaugh left to go towards C block until when you saw Mr. Silbaugh after you had been stabbed?

A: [Nissen] I would say it's more like 45 seconds.

Silbaugh App. at 71.

-4-

kitchen since March 1990. Id., Flores Dep. at 180-83. Flores was working in the kitchen in 1992 when Silbaugh first became weekend supervisor. Id., Silbaugh Dep. at 166. Silbaugh believed Flores was properly approved to work in the kitchen on February 20, 1993, because Flores' name was on the posted work roster. Silbaugh App., Silbaugh Dep. at 51-52. According to Nissen's testimony, Silbaugh was not subjectively aware of any risk to Nissen. "I don't think Mr. Silbaugh at any time had any inclination of anything that was going on." Id., Nissen Dep. at 70. Nissen also testified that he had no words at all with Hettgar prior to the stabbing. Shillinger and Hettgar Br. (hereinafter "Shillinger Br."), Nissen Dep., App. G at 60-61. According to Nissen, Hettgar "was no where in the picture." Id. App. G at 69.

## DISCUSSION

Qualified immunity shields governmental officials performing discretionary functions from suit if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The immunity is not merely from liability, but from suit. Id.; Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate a substantial correspondence between the alleged conduct and prior law clearly prohibiting such conduct. Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992).

We review de novo the district court's ruling on summary judgment. Taylor v. Meacham, 82 F.3d 1556, 1559 (10th Cir.), cert. denied, 117 S. Ct. 186 (1996). When the summary judgment motion raises qualified immunity, we apply "'special rules to determine whether the motion was properly granted or denied.'" Id. (quoting Pino v. Higgs, 75 F.3d 1461, 1467 (10th Cir. 1996)). As a threshold question, we ask whether the alleged wrongful conduct violated any constitutional right at all. Siegert v. Gilley, 500 U.S. 226, 232 (1991) ("Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on the merits."). If we determine that the plaintiff has failed to allege facts which would constitute a violation of clearly established law, the defendant claiming qualified

immunity is entitled to summary judgment as a matter of law.[4] Id. at 233 (citing Mitchell, 472 U.S. at 526).

A.  Elements of an Eighth Amendment Violation.  The law regarding Nissen's Eighth Amendment claim was clearly established at the time of the alleged actions. Wilson v. Seiter, 501 U.S. 294, 303 (1991) (noting that the protection afforded an inmate against violence from other inmates is a condition of confinement subject to the Eighth Amendment).  However, not every injury caused to one inmate by another inmate translates into Eighth Amendment liability for prison officials responsible for the inmates' safety.  Farmer v. Brennan, 114 S. Ct. 1970, 1977 (1994).  In order to prove an Eighth Amendment violation, a plaintiff must show that the alleged deprivation was

---

[4]Nissen states the general, reasonable man inquiry for determining whether each of the defendants is entitled to qualified immunity as follows:

> The question, then, under Harlow and Anderson is whether, as to Silbaugh, a correction officer would have known he was violating a prisoner's clearly established rights by knowingly giving a butcher knife to an unsupervised knife murderer in the maximum security unit of the penitentiary in February 1993.  As to Appellant Hettgar, the question would be by not training his subordinate as to the existence of policies regarding the dissemination of knives in the prison, was he responsible.  As to Appellant Shillinger, the question was, after having established the policy to protect the inmates from known, obvious risks, the action to not disseminate the policy and failure to assure the employees of the penitentiary were trained in them, is he responsible.

Appellee's Br. at 17.  However, before we can reach those questions, Siegert requires us to ask whether the alleged conduct violates any constitutional right at all.  Siegert, 500 U.S. at 232.

objectively sufficiently serious, and that the prison official acted with a subjectively sufficiently culpable state of mind.  Id. (citing Wilson, 501 U.S. at 297-98); Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993).  Where, as in Nissen's case, the defendants concede the objective component, we focus upon the subjective component.  In a condition of confinement case, the necessary subjective culpable state of mind is "deliberate indifference."  Estelle v. Gamble, 429 U.S. 97, 103 (1976) (concluding that deliberate indifference constitutes "'the unnecessary and wanton infliction of pain'") (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  Mere negligence or inadvertence is insufficient to support a violation of the Eighth Amendment.  Id. at 106.  Likewise, civil recklessness or gross negligence does not implicate the Eighth Amendment.[5] Farmer, 114 S. Ct. at 1978-79 & n. 4; see also Berry v. City of Muskogee, 900 F.2d 1489, 1496 (10th Cir. 1990).[6]  Rather, "deliberate indifference" requires a "showing that the

---

[5]"The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  Farmer, 114 S. Ct. at 1978 (citing Prosser & Keeton on the Law of Torts, § 34, at 213-14 (5th ed. 1984).  By contrast, criminal law "permits a finding of recklessness only when a person disregards a risk of harm of which he is aware."  Id. at 1978-79.

[6]Berry involved a suit against the city for its acts and omissions relating to the murder of a prisoner-informer by fellow prisoners whom he had incriminated.  Following City of Canton v. Harris, 489 U.S. 378 (1989), Berry noted that deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  Berry, 900 F.2d at 1495.  Further following Canton, and citing Prosser & Keeton on the Law of Torts, § 34, Berry held that an objective tort standard for reckless conduct satisfies the Eighth Amendment requirement of deliberate indifference.  Id. at 1496 ("[A]n official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards

(continued...)

official was subjectively aware of the risk." Farmer, 114 S. Ct. at 1974.[7] (1994). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979.

B. Alleged Conduct and Elements of Constitutional Violation.

1. AS TO SILBAUGH:

Conduct. In his original complaint, Nissen alleged facts common to all defendants. The only allegations regarding Silbaugh's state of mind are that all defendants "negligently" allowed Flores to work in the kitchen, and that Silbaugh "negligently" left the kitchen when Flores had a knife. Shillinger App. at 3-4. After

_____

[6](...continued)
a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights."). Farmer approves the objective standard for finding a municipality's deliberate indifference. Farmer, 114 S. Ct. at 1980-81 (noting that Canton permits municipal liability "to be premised on obviousness or constructive notice"). However, Farmer refused to extend that standard to an individual official. Farmer, 114 S. Ct. at 1981 ("Canton's objective standard . . . is not an appropriate test for determining the liability of prison officials under the Eighth Amendment as interpreted in our cases."); see also note 7 infra.

[7]Analyzing Supreme Court precedent, Farmer settles the circuit split in defining deliberate indifference. Farmer makes it clear that deliberate indifference requires a finding of subjective (i.e., criminal) recklessness under the Court's Eighth Amendment cases. 114 S. Ct. at 1976, 1978-79.

defendants filed their motions for summary judgment, Nissen moved to file an amended complaint. In its order denying defendants' claim of qualified immunity, the district court partially granted Nissen's motion to amend his complaint.[8] In his amended complaint Nissen alleges in his factual background that Silbaugh "negligently hired Arlan Flores." Id. at 20, ¶ 28. In his third claim for relief under § 1983 and the Eighth Amendment, Nissen incorporates his factual background, including ¶ 28, and further alleges that Silbaugh "recklessly and indifferently" hired Flores, "recklessly and intentionally" gave Flores a knife, "reckless and intentionally" left the kitchen without securing the knives, and also generally violated the Eighth Amendment by failing to train, follow regulations, and supervise. Id. at 24, ¶¶ 50-51. Finally, in his fourth Claim for relief, Nissen alleges that all defendants, including Silbaugh, were obligated to insure that Silbaugh and Flores were minimally trained in hiring employees and in distribution, securing and using knives. Id. at 25, ¶¶ 52-53.

Elements of Constitutional Violation. Certainly, allegations of negligent conduct are insufficient to implicate the Eighth Amendment. Likewise, claims of recklessness which incorporate a fact statement of negligence speak to tort conduct outside the Constitution's purview. Even if we limited the negligence allegation to Flores' hiring, Nissen's remaining conclusory allegations of reckless and intentional conduct are

---

[8]The court denied the motion insofar as it sought to add Arlan Flores as a § 1983 defendant.

-10-

insufficient to satisfy the scienter requirement of deliberate indifference.[9] "[W]e cannot accept [the] argument that . . . a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it." Farmer, 114 S. Ct. at 1981. Nissen does not allege that Silbaugh was subjectively aware of the risk of harm to Nissen. In fact, Nissen testified that Silbaugh did not appreciate the risk. "I don't think Mr. Silbaugh at any time had any inclination of anything that was going on." Silbaugh App., Nissen Dep. at 70. That testimony verifies the limitations of Nissen's allegations against Silbaugh, and clarifies that, at most, his amended complaint speaks to civil recklessness or gross negligence. Such allegations do not state a violation of the Eighth Amendment.[10] "[A]n official's failure to alleviate a significant risk that he should

_____

[9]In a related context, we have noted that subjective recklessness, whereby the defendant both recognizes the unreasonable risk and actually intends to expose the plaintiff to that risk without regard to the consequences, may satisfy the scienter requirement of § 1983. Uhlrig v. Harder, 64 F.3d 567, 573 and n.8 (10th Cir. 1995), cert. denied, 116 S. Ct. 924 (1996). Although we have occasionally referred to such recklessness as an "intentional tort," our subjective requirements are consistent with Farmer's requirements for criminal recklessness. Id. at n.8.

[10]Approving our analysis in Uhlrig, see note 9 supra, the Ninth Circuit has recently rejected the following gross negligence instruction as insufficient to satisfy the requirements of deliberate indifference in a related context:

A person acts with gross negligence when the person intentionally acts unreasonably with regard to a known risk or acts unreasonably with regard to a risk so obvious that the person must be assumed to have been aware of it. And the magnitude of the risk is such that it is highly probable that harm will follow.

(continued...)

-11-

have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 114 S. Ct. at 1979.

2. AS TO HETTGAR:

Alleged Conduct. In his original complaint, Nissen alleged that he informed Hettgar about the threats to his life. However, in his deposition, Nissen indicated that he never spoke to Hettgar prior to the stabbing, and the amended complaint has no allegation that Hettgar knew of any danger to Nissen. In his statement of facts, Nissen alleges that Hettgar was responsible for training regarding knife control. The amended complaint alleges that Hettgar was in charge of Central Services, had a copy of the knife policy, but never informed his staff as to its existence or importance. Shillinger App. at 22, ¶ 42. In his fourth claim for relief, Nissen incorporates his previous allegations and alleges that defendants, including Hettgar, violated the Eighth Amendment by failing to train, follow regulations or supervise. Id. at 25, ¶¶ 52-53.

Elements of Constitutional Violation. We have already held that Silbaugh's alleged acts did not constitute a constitutional violation. Therefore, supervisory liability does not apply,[11] and any claim that Hettgar violated the Eighth Amendment must be

_____

[10](...continued)
L.W. v. Grubbs, 92 F.3d 894, 899-900 (9th Cir. 1996).

[11]By definition, the predicate to supervisory liability is the existence of a constitutional violation. That is, a supervisor may be liable under § 1983 only if there is
(continued...)

-12-

premised upon Hettgar's independent deliberate indifference. As noted, Nissen's only allegation against Hettgar is that he failed in his responsibility to train and disseminate the knife policy. Such a claim may state a cause of action in tort for negligence. However, lacking any facts indicating that Hettgar was subjectively aware of any substantial risk to Nissen, the claim fails under the Eighth Amendment.

3. <u>AS TO SHILLINGER</u>:

<u>Alleged Conduct</u>. As with Hettgar, Nissen complains that Shillinger failed in his responsibility to properly disseminate the knife policy. Additionally, Nissen alleges that he informed Shillinger of the threats to his life, and that Shillinger promised to move him to safety.

> Well, it went on for about . . . maybe a week, two at the most. I was really getting scared, a lot of threats were being made against my life. And I talked with Mr. Shillinger. He came on to the yard. I would often talk with Mr. Shillinger when he came onto the yard. Basically, it was around 12:00 when I got off my work shift, to 12:30. And Mr. Shillinger told me that all -- that he had talked to [the security officials] and they were trying to get me out to a work release program as soon as possible, but all they needed was approval from the department of corrections.
>
> . . . .

---

[11](...continued)
an "'affirmative link' between the <u>constitutional violation</u> and the supervisor's own actions, or failure to supervise." <u>Mee v. Ortega</u>, 967 F.2d 423, 431 (10th Cir. 1992) (emphasis added) (citing <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1527 (10th Cir. 1988)).

I'd explained to Mr. Shillinger the threat that was on my life and what was going on.

. . . .

And they kept explaining to me how they was trying to get me out to work release, how the only thing that they was waiting on was an approval from the department of correction. . . . I was relied (sic) on [Shillinger's] word that I would be leaving anytime going to work release. That was what they'd told me.

Appellee's Supp. App., Nissen Dep. at 142, 147-49.

Elements of Constitutional Violation. As with Hettgar, supervisory liability does not apply, and any liability must arise from Shillinger's independent deliberate indifference. Thus, we view Shillinger's alleged failure to provide for Nissen's safety, including his failure to assure that the knife policy was properly disseminated, in light of the allegation that he knew of the substantial risk to Nissen. Nissen's allegations, that Shillinger was subjectively aware of the risk of serious harm and failed to take reasonable steps to abate the harm, state an Eighth Amendment claim. While Shillinger disputes Nissen's allegations, under Johnson we lack jurisdiction to review the district court's determination that those disputed facts preclude summary judgment in Shillinger's favor.

For the reasons stated, we REVERSE the district court's rulings as to Silbaugh and Hettgar, but we DISMISS the appeal as to Shillinger.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge