**Phillip EARREY, Plaintiff,**

v.

**CHICKASAW COUNTY, MISSISSIPPI, Defendants.**

Civil Action No. 1:95cv391–D–A.

United States District Court,
N.D. Mississippi,
Eastern Division.

May 28, 1997.

Jim Waide, Tupelo, MS, for plaintiff.

David O'Donnell, Oxford, MS, for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Presently before the court is the motion of the defendant Chickasaw County, Mississippi for the entry of summary judgment on its behalf as against the plaintiff's claims in this case. Finding that the motion is not well taken, the court shall deny the motion and allow the plaintiff's claims to proceed to trial in this cause.

## I. Factual Background [1]

In October of 1994, the plaintiff failed a drug test required of him as a condition of probation from a previous conviction for the possession of marijuana. Consequently, law enforcement officials arrested the plaintiff on December 6, 1994, and detained him at the Chickasaw County Jail in Okolona, Mississippi.[2] Ultimately, Phillip Earrey remained at this Okolona facility from December 6, 1994, until December 31, 1994. During that time prison officials allowed the plaintiff, as well as most of the persons housed at this facility, to leave the jail during the day to work and then to return to the jail in the evenings. As described by the jailer Harold Lindsey:

A. Well, it's because that jail over there [in Okolona], it's not—its's not a— what we call a facility for criminals.

In other words, it's more or less—we use it more or less for work—a work camp or a place to work. Most of our prisoners, they work.

Exhibit "F" to Defendant's Motion, Deposition of Harold Lindsey, p. 6.

The interior of the facility consisted of six cells, which were each designed to hold four prisoners, and living quarters for the full-time jailer Harold Lindsey. According to jail policy, Lindsey—as the only jailer of this facility—had to be present at the jail twenty-four hours a day, seven days a week. He is only permitted to leave the jail when deputy sheriffs are present at the jail. Further, jail policy requires Lindsey to check on the prisoners every hour during the day. However, nighttime checks are not made:

Q: Does that check on every hour apply during the nighttime hours?

A: No, ma'am.

Q: So, technically you were supposed to check on them 12 hours one time?

A: Well, from the time I get up—I get up in the morning and get breakfast and everything until I lock up—lock everything down at night.

Exhibit "F" to Defendant's Motion, Deposition of Harold Lindsey, p. 23.

While the jail consisted of six cells, some or all of the door locks on these cells are inoperative.[3] As a result, the prisoners were generally left to interact freely with one another and were not segregated from one another. Lindsey and the Sheriff discussed particular prisoners and made determinations concerning whether to house prisoners at the Okolona facility or send them on to the Houston facility for detention. This decision generally turned upon the danger of violence that the particular prisoner represented to

---

**1.** In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. The court's factual summary is so drafted.

**2.** In addition, Chickasaw County Deputy Sheriffs also arrested Earrey on charges of disturbing the

peace and public intoxication. These additional charges are relevant in light of this court's determination of the plaintiff's custodial status. *See* II(B)(1), *infra*.

**3.** According to the deposition testimony of Lindsey and Sheriff Simmons, at least one cell door was in working condition. In this cell prison officials put those prisoners deemed to be too violent for release in the general population of the jail and who were awaiting transport to the Houston facility.

other prisoners. Exhibit "E" to Defendant's Motion, Deposition of Sheriff Simmons, p. 9 ("[A]s a Sheriff or jailer you got to figure out, you know, whether they're going to be all right or not. Most of the time, if they are violent, we split them up.").

On December 31, 1994, at sometime between 7:30 and 8:00 p.m., fellow prisoners Tyrone Marshall and Roosevelt Dockins severely beat the plaintiff while other inmates blocked Earrey's escape and access to the emergency switch. Apparently, Marshall and Dockins believed that the plaintiff had stolen a quantity of marijuana from another prisoner. The beating lasted approximately fifteen minutes and ceased when Earrey promised his attackers to obtain money from his family to pay for the missing marijuana. Earrey called his brother, Bill, and asked him to bring money to the jail. Bill Earrey called Lindsey a few minutes after and relayed his suspicions that Phillip Earrey was in trouble. Lindsey went to the cell area and found the injured Earrey. After summoning deputies to the jail, Lindsey had one deputy carry Earrey to the hospital. Phillip Earrey was not again housed in the Okolona facility, and after his release from the hospital was instead placed in the county's jail facility in Houston, Mississippi.

Prison officials at the Okolona facility could monitor the prisoners electronically in two ways—an intercom and an emergency switch. The intercom microphone and the emergency switch were located beside the entrance to the cell area. The receiving ends of the intercom were located in the jail's office and in Lindsey's living area. At the time of the attack, Lindsey "heard the racket" over the intercom system.[4] The length of time between "the racket" over the intercom and Lindsey's discovery of Earrey is unclear.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj,* 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Matagorda County v. Russell Law,* 19 F.3d 215, 217 (5th Cir.1994).

### B. Civil Rights Claims

#### 1. The plaintiff's status

Some question has arisen in the submissions before this court regarding the plaintiff's status at the time of the attack. More precisely, the parties disagree concerning whether Mr. Earrey was a pretrial detainee or whether he would be more properly classified as a convicted inmate. While the parties appear to be of the opinion that under the current state of Fifth Circuit law the problem is in reality one of a distinction without a difference, the undersigned believes that the custodial status of the plaintiff in this case does indeed carry sufficient import to warrant discussion.

Pretrial detainees are protected from harm by virtue of the Due Process clause of the Fourteenth Amendment, while

---

4. As the plaintiff notes, Lindsey himself testified in his deposition that he did not hear any disturbance over the intercom system. Exhibit "F" to Defendant's Motion, Deposition of Harold Lindsey, p. 34–35. Sheriff Simmons, however, stated that Lindsey informed him otherwise.

convicted inmates are protected from harm by the Eighth Amendment's prohibition against cruel and unusual punishment. *See, e.g, Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (convicted inmates); *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979) (pretrial detainees); *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996) (discussing both). As the parties correctly note, in instances where the plaintiff's "failure to protect" claim arises out of an episodic act or omission on the part of a jail official, the appropriate standard to be applied is identical regardless of the plaintiff's custodial status. *Farmer,* 511 U.S. at 847–49, 114 S.Ct. at 1984–85, 128 L.Ed.2d at 832 (requiring convicted inmate to demonstrate subjective knowledge of a "substantial risk of serious harm and the failure to take reasonable measures to abate it."); *Hare v. City of Corinth,* 74 F.3d 633, (5th Cir.1996) (applying *Farmer*'s subjective "deliberate indifference" standard to claim of pretrial detainee). Nevertheless, where a pretrial detainee instead challenges a general condition of confinement, the court presumes intent on the part of prison officials and looks to whether the challenged condition of confinement is reasonably related to a legitimate governmental objective. *Bell,* 441 U.S. at 539, 99 S.Ct. at 1874; *Nerren v. Livingston Police Dept.,* 86 F.3d 469, 474 (5th Cir.1996); *Hamilton,* 74 F.3d at 104. The Fifth Circuit, in discussing the two apparently different standards for use in claims by pretrial detainees, has noted:

> Application of a deliberate indifference standard to claims by pretrial detainees is consistent with our cases and the dictates of *Bell,* because the deliberate indifference standard does not impose a higher burden on pretrial detainees than the *Bell* test. *Properly understood, the Bell test is functionally equivalent to a deliberate indifference inquiry.*

*Hare,* 74 F.3d at 646. The equivalent nature of the tests notwithstanding, the proper standard for determining which are "episodic act" cases and which are "general conditions" cases has created some friction in the Fifth Circuit. *See, e.g., Scott v. Moore,* 85 F.3d 230, 236 (5th Cir.1996) ("My first disagreement [with the majority] is over the standard we use to determine municipal liability.") (Smith, C.J., dissenting). In the context of claims arising under the Eighth Amendment's prohibition against cruel and unusual punishment, however, the United States Supreme Court has specifically rejected a distinction between "conditions of confinement" and "specific acts or omissions directed at individual prisoners." *Farmer,* 511 U.S. at 837–39, 114 S.Ct. at 1979–80, 128 L.Ed.2d at 826 ("In *Wilson v. Seiter,* we rejected a reading of the Eighth Amendment that would allow liability to be imposed on prison officials solely because of the presence of objectively inhumane prison conditions."); *Wilson v. Seiter,* 501 U.S. 294, 300 n. 2, 111 S.Ct. 2321, 2325 n. 2, 115 L.Ed.2d 271 (1991); *Hare,* 74 F.3d at 633 n. 2. Under either circumstance, a subjective showing of deliberate indifference is nonetheless required on the part of some responsible prison official in order to establish a violation of the Eighth Amendment.

■ Where a parolee such as the plaintiff is incarcerated both Fourteenth Amendment due process concerns and the Eighth Amendment's prohibition against cruel and unusual punishment are implicated. *Hamilton,* 74 F.3d at 104 n. 4; *Rankin v. Klevenhagen,* 5 F.3d 103, 106 (5th Cir.1993). Nevertheless, the presumptive intent to punish derived from the *Bell* test does not arise in such a case involving "conditions of confinement":

> Such an inference is warranted in the case of the typical pretrial detainee, in which the justification for detention arises only from a crime with which the person has been charged but not convicted. For such a person, the due process right to be free from punishment for a pending charge is equivalent to the right to be free from punishment altogether. In such cases, a finding that the government intended to punish the detainee is equivalent to a finding that the government intended to punish the detainee for the pending charge. Thus, an inference that governmental intent was punitive is equivalent to an inference that the challenged condition is unconstitutional. However, *such an inference is not warranted in the case of the detained parolee.* Unlike the

typical pretrial detainee, the justification for the detention of a detained parolee is dual. As noted by the Seventh Circuit, the detention and subsequent reincarceration of a parolee are only triggered by the new arrest; detention and reincarceration are justified by the prior conviction. *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir.1988). For detained parolees, the due process right to be free from punishment for a pending charge is not equivalent to the right to be free from punishment altogether. In such cases, a finding that the government intended to punish a detained parolee is not equivalent to a finding that the government intended to punish the detained parolee for a pending charge. Thus, an inference that government intent was punitive is not equivalent to a finding that the challenged condition is unconstitutional.

*Hamilton*, 74 F.3d at 105–06 (emphasis added). Rather, in light of the special nature of his status, a detained parolee may establish a Fourteenth Amendment due process claim for the conditions of his confinement only where he can present direct evidence of an expressed intent to "punish him for the crime for which he has been charged but not yet convicted." *Id.* at 106. Additionally, however, even without the availability of the *Bell* test, he may still utilize the Eighth Amendment to pursue a separate claim regarding conditions of confinement. *Id.* at 106 n. 8.

▮ In this case, it is undisputed that at the time of his arrest and incarceration at the Okolona facility of the Chickasaw County Jail, the plaintiff was a parolee detained pending the resolution of new charges against him. As such, his classification places him in no better situation than the plaintiff in *Hamilton*. Mr. Earrey is unable to avail himself of the *Bell* test and its inference of intent for claims arising under the Fourteenth Amendment. Likewise, there is no evidence before the court that he was "punished" because of the new, pending charges against him. He may, however, pursue a "failure to protect" claim under the Eighth Amendment.

### 2. The Eighth Amendment

▮ The Eighth Amendment imposes a duty upon responsible prison officials to protect prisoners from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 831–32, 114 S.Ct. at 1976–77, 128 L.Ed.2d at 822; *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). Being assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981). Nevertheless, an underlying principle of the Eighth Amendment's prohibition against cruel and unusual punishment is that it only prohibits unnecessary and wanton inflictions of pain. *Farmer*, 511 U.S. at 833–34, 114 S.Ct. at 1977, 128 L.Ed.2d at 823; *Wilson*, 501 U.S. at 297, 111 S.Ct. at 2323, 115 L.Ed.2d at 278; *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). Consequently, Eighth Amendment liability only attaches when a responsible official has a sufficiently culpable state of mind:

> [A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847, 114 S.Ct. at 1984, 128 L.Ed.2d at 832. Most certainly, this standard applies to any Eighth Amendment claim against a defendant in his individual capacity.

What is entirely unclear is whether *Farmer*'s subjective deliberate indifference standard is required to establish the underlying violation in an Eighth Amendment claim against a municipality or county. Some courts take the approach that subjective deliberate indifference is not required in a plaintiff's Eighth Amendment claim against a municipality or county, relying upon *Farmer*'s statement that "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of an official." *Farmer*, 511 U.S. at 841, 114 S.Ct. at 1981, 128 L.Ed.2d at 828 (discussing *Canton v.*

*Harris,* 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989)); *see, e.g., Nissen v. Silbaugh,* 104 F.3d 368, 1996 WL 731233, *3 (10th Cir.) ("*Farmer* approves the objective standard for finding a municipality's deliberate indifference."); *Medley v. Turner,* 1995 WL 23522, *2 (N.D.Ill.) ("[T]his court distinguished [*Canton* ], a Fourteenth Amendment 'failure to train' case involving municipal liability under § 1983, 'on the ground that it involved a municipality rather than individuals.' ").

Others simply take *Farmer*'s reference to *Canton* to mean that municipal liability, as a matter of general § 1983 law, cannot attach without objective deliberate indifference and is therefore separate and distinct from the subjective state of mind requirement needed to establish a violation of a the Eighth Amendment. *See, e.g., Howard v. Grinage,* 82 F.3d 1343, 1352 (6th Cir.1996) ("[A] deprivation asserted under the Eighth Amendment requires proof that a prison official have a 'sufficiently culpable state of mind.' The Court thus implied that *Farmer*'s definition of 'deliberate indifference' does government[] responsible for [a] constitutional tort.' "); *Lowrance v. Coughlin,* 862 F.Supp. 1090, 1115 (S.D.N.Y.1994) ("The *Farmer* Court, however, found that because *Canton* involved an interpretation of municipal liability under § 1983, it did not govern the definition of deliberate indifference under the Eighth Amendment."); *Madrid v. Gomez,* 889 F.Supp. 1146, 1248 (N.D.Cal.1995) (noting that in establishing § 1983 supervisory liability "[o]f course, in the prison context, a showing of deliberate indifference must satisfy the subjective test enunciated in *Farmer,* rather than the objective standard contained in *Canton.*").

Under this second approach, a plaintiff must still establish an underlying Eighth Amendment violation against a responsible official utilizing the subjective deliberate indifference standard. In order to attach municipal or county liability for that violation, however, the plaintiff must also demonstrate that the actions or inactions of the individual official were taken pursuant to an official custom, policy or practice maintained by that governmental entity with *objective* deliberate

indifference to the known or obvious consequences of maintaining such a policy or permitting such a practice.

The matter remains unresolved. *Scott v. Abate,* 1995 WL 591306, *10 (E.D.N.Y.) (noting "there is some debate over whether the Supreme Court intended to draw a material distinction between municipal liability and individual liability ... "). Even legal scholars disagree on this subject. *Compare* Barbara Kritchevsky, *A Return to Owen: Depersonalizing Section 1983 Municipal Liability Litigation,* 41 VILL. L. REV. 1381, 1421 (1996) ("The *Farmer* Court established that the deliberate indifference standard for municipal liability cases is objective."), *with* Kit Kinports, *The Buck Does Not Stop Here: Supervisory Liability in Section 1983 Cases,* 97 U. ILL. L. REV. 147 (1997) ("[I]t is wrong for the lower courts to choose a standard of supervisory liability for all Section 1983 cases by blindly following the Supreme Court opinions analyzing the state of mind necessary to make out a violation of a particular constitutional provision. To do so is to confuse two independent elements of a Section 1983 cause of action: proof of a constitutional violation, with its attendant state-of-mind inquiry, and the appropriate standard of supervisory liability.").

 In any § 1983 action concerning a constitutional injury which does not arise directly from a municipal action, but rather as a more indirect result of municipal action, the imposition of

> We held that, *quite apart from the state of mind required to establish the underlying constitutional violation*—in [*Canton* ], a violation of due process—a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.

*Board of County Com'rs of Bryan County v. Brown,* ——— U.S. ———, ———, 117 S.Ct. 1382, 1390, 137 L.Ed.2d 626 (1997) (emphasis added). It is important to distinguish between the "state of mind" required to establish a violation of a constitutional right and the

culpability standard required to impose § 1983 liability upon a municipality or county. *Brown*, —— U.S. at ——, 117 S.Ct. at 1388 ("In any 1983 suit, however, *the plaintiff must establish the state of mind required to prove the underlying violation.*") (emphasis added). As to discussions on the problematic nature of proving a governmental entity's culpable state of mind, the court is reminded that a governmental entity can only act through its officials:

> The distinction between the acts of the municipality and the acts of its employees is preserved—and respondeat superior avoided—through an exacting application of *Monell*'s "official policy requirement," which provides that "municipality liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."

*Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 754 (5th Cir.1993). It is paramount to remember that the Eighth Amendment only prohibits cruel and unusual *punishment.* In order to constitute punishment, the United States Supreme Court has stated that a mental state equivalent to that of criminal recklessness is required—a recklessness that rises to the level of an intent to punish. *Farmer,* 511 U.S. at 836–37, 114 S.Ct. at 1978–79, 128 L.Ed.2d at 825. The actions of governmental officials, who are fully capable of subjective deliberate indifference, serve as the basis of governmental liability for Eighth Amendment violations. While the governmental entity may only need be shown to be objectively deliberately indifferent to the known or obvious consequences of a custom or policy which does not itself violate federal law, it cannot be held liable unless the plaintiff shows that a constitutional violation has in fact occurred. In the Eighth Amendment context, in order for a violation to occur, a prison official must know "that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it."

█ After careful consideration of the record evidence, the undersigned is of the opinion that the defendant has not sufficiently dispelled genuine issues of material fact in the case at bar. In light of the knowledge that may have been possessed by Sheriff Simmons and Harold Lindsey, as well as the members of the Chickasaw County Board of Supervisors, the plaintiff may ultimately be able to present a viable claim for the violation of his Eighth Amendment rights. *Farmer,* 511 U.S. at 841–42, 114 S.Ct. at 1981–82, 128 L.Ed.2d at 828 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, *including inference from circumstantial evidence* ... and a factfinder may conclude that a prison official knew of a risk from the very fact that the risk was obvious.") (emphasis added). Questions of fact remain both as to the existence of subjective knowledge on the part of Simmons and Lindsey, as well as the actual or imputed knowledge of the county itself.

### III. Conclusion

The court finds that genuine issues of material fact remain as to the plaintiff's claim at bar. As such, summary judgment is inappropriate on the plaintiff's civil rights claim arising under the Eighth Amendment. In any event, this court has the discretion to deny the defendant's motion for summary judgment and allow the plaintiff to proceed to trial and more fully develop the record for the trier of fact. *Kunin v. Feofanov,* 69 F.3d 59, 61 (5th Cir.1995); *Black v. J.I. Case Co.,* 22 F.3d 568, 572 (5th Cir.1994); *Veillon v. Exploration Services, Inc.,* 876 F.2d 1197, 1200 (5th Cir.1989).

A separate order in accordance with this opinion shall issue this day.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Pursuant to a memorandum opinion issued this day, it is hereby ORDERED THAT:

1) the defendant's motion for the entry of summary judgment on its behalf is hereby DENIED.